

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| AMARILLO, CHANNING, DALHART, AND LUBBOCK, | § | No. 08-14-00193-CV |
|  |  | Appeal from |
| Appellants, | § |  |
|  |  | 53rd District Court |
| v. | § |  |
|  |  | of Travis County, Texas |
| RAILROAD COMMISSION OF TEXAS, | § |  |
|  |  | (TC # D-1-GN-12-003997) |
| Appellee. | § |  |

## **O P I N I O N**

Any major change in a gas utilities' rates are subject to approval by the governmental units that regulate them.[1] They can justify a rate increase based on their cost of providing gas service, and by statute are accorded a reasonable return on their invested capital in excess of their operating costs.[2] But in identifying those costs, geographic boundaries can sometimes come into play. Here for instance, Atmos Energy Corp. provides gas service to cities and unincorporated areas located in its "West Texas Division" which encompasses much of the Panhandle of Texas south to Midland/Odessa and Big Spring. When Atmos sought a rate increase for customers in

---

[1] TEX.UTIL.CODE ANN. §§ 104.101 and 104.102 (West 2007).

[2] TEX.UTIL.CODE ANN. §104.051.

the West Texas Division, the cities of Amarillo and Lubbock[3] believed the cost to provide their gas service was different than for other cities located in that division. They wanted the Texas Railroad Commission to individually analyze Atmos' costs within three smaller rate jurisdictions which are subsets of the West Texas Division, as the Commission had historically done. Amarillo and Lubbock believed that failing to do so would require them to subsidize the costs of their neighboring cities. Those other cities,[4] conversely, contended that they had been subsidizing Amarillo and Lubbock in the past and urged the Commission to consider Atmos' costs uniformly across the West Texas Division, under what the parties refer to as a "system-wide cost of service basis."

The Commission preemptively decided that it would set rates on a system-wide basis and accordingly excluded Amarillo and Lubbock's evidence which addressed differences in the cost of service between the rate jurisdictions. But the ultimate question of considering system-wide rates is only tangentially before us. The issues raised here largely pertain to the procedural fairness of the hearing in which the Commission decided this issue, and the manner in which it justified its final decision. And more importantly, a partial settlement agreement entered into by the parties while they were before the Commission, in conjunction with actions they took after this case was appealed, raise several justiciabilty issues.

---

[3] Included with Amarillo and Lubbock are the towns of Channing and Dalhart. We collectively refer to them as Amarillo and Lubbock.

[4] The other towns appeared through the "West Texas Cities Steering Committee" and now include Abernathy, Amherst, Anton, Big Spring, Bovina, Brownfield, Buffalo Springs, Canyon, Coahoma, Crosbyton, Dimmitt, Earth, Edmonson, Floydada, Frosan, Friona, Hale Center, Happy, Hart, Hereford, Idalou, Kress, Lake Tanglewood, Lamesa, Levelland, Littlefield, Lockney, Lorenzo, Meadow, Midland, Muleshoe, Nazareth, New Deal, Odessa, O'Donnell, Olton, Opdyke West, Palisades, Pampa, Panhandle, Petersburg, Plainview, Post, Quitaque, Ralls, Ransom Canyon, Ropesville, Sanford, Seagraves, Seminole, Shallowater, Silverton, Slaton, Smyer, Springlake, Stanton, Sudan, Tahoka, Timbercreek Canyon, Tulia, Vega, Wellman, Wilson, and Wolfforth. The trial court's judgment and the notice of appeal identify only the Railroad Commission of Texas as Appellee, but Atmos and the West Texas Steering Committee filed pleadings below as intervenors, and have filed briefs on appeal.

On the record before us, we conclude that we must dismiss the appeal for want of jurisdiction.

## FACTUAL SUMMARY

Atmos Energy sells gas to residential, commercial, industrial, and state owned customers. It divides its Texas customers into two divisions. The West Texas Division serves the Panhandle of Texas and various cities in West Texas. The West Texas Division is further broken into three rate jurisdictions: the Amarillo Rate Jurisdiction; the Lubbock Rate Jurisdiction; and the West Texas Cities Rate Jurisdiction. Amarillo (with some variations in the surrounding towns) has been in its own rate jurisdiction since 1983. Lubbock has been its own rate jurisdiction since 2003.

Starting in early 2012, Atmos sought a rate increase. It did so by serving notice if its intent to raise rates on the entities that regulate Atmos. It sent notice to its customers living in unincorporated areas, and at the same time notified the Commission, which has exclusive original jurisdiction over rates in unincorporated areas. TEX.UTIL.CODE ANN. § 102.001(a)(the Gas Utilities Regulatory Act, hereinafter GURA). It also informed the various cities in the West Texas Division of its intention to raise rates. Because those cities in the first instance regulate Atmos, it must also seek their input first. *Id*. at § 103.001. A large number of cities denied Atmos' rate increase. Atmos had the ability to appeal those denials to the Commission, and it did so. *Id.* § 102.001(b)(exclusive appellate jurisdiction with Railroad Commission); *Id*. at § 103.051 (right to appeal from municipal determination); *Id.* at § 103.055(a)(appeal is *de novo*). The various appeals were consolidated into a rate case bearing the designation GUD No. 10174. A number of entities intervened. Relevant here, Atmos, Amarillo and Lubbock, and the "West

Texas Cities Steering Committee" (which now speaks for the cities listed in footnote two) participated below.

Atmos' request was unique to the West Texas District. The prior rate increases had focused on determining the cost of providing service in each of the three rate jurisdictions. But Atmos sought a system-wide increase which would effectively merge the rate increase analysis for the three rate jurisdictions. Atmos' argument in this regard is that its capital expenditures, call centers, and other associated costs have become so integrated that they can no longer be allocated to what it contends are artificial boundary lines. The West Texas Cities Steering Committee aligned itself with Atmos, and had likely pushed Atmos to adopt system-wide rates.

Amarillo and Lubbock opposed the system-wide rate methodology. Based on prior rate cases, Amarillo and Lubbock residents enjoyed lower rates based on what they contend are lower costs to serve those cities. Their argument is that the per customer cost to serve a larger concentrated population center is less than the cost to serve more rural, and smaller cities. As they frame the argument, it is cheaper to serve fifty customers from one mile of gas pipeline than five customers from the same length of pipe.

Prior to the actual rate hearing, the West Texas Cities Steering Committee filed a motion to preclude litigation of the system-wide rate increase issue. Procedurally, the Commission permits parties to file motions to preclude issues that have been already been considered and decided by the Commission.[5] These matters can include previously decided issues of

---

[5] The practice is attributed to an interim order issued in GUD Docket No. 9670 dated August 15 & 22, 2006, that pre-approved a particular method for calculating depreciation. Tex. R.R. Comm'n, Petition for De Novo Review of the reduction of the Gas Utility Rates of Atmos Energy Corp., Mid-Tex Division, by the Cities of Addison, Benbrook, Blue Ridge, et al, Statement of Intent filed by Atmos Energy Corp., Mid-Tex Division to Change Rates in the Company's Statewide Gas Utility System, and Petition for Review from the Actions of Municipalities Denying Rate Request (Gas Utils. Div. August 15 & 22, 2006)(Interim Orders). The order recited a number of prior decisions approving the same method for calculating depreciation and ordered the parties not to litigate the choice of depreciation methods. Interim orders precluding litigation on various other issues have been issued in subsequent

Commission policy, the application of statutes, and the interpretation of rules. One stated rationale for these interim orders is to reduce the expense in rate cases.

West Texas Cities Steering Committee's motion was heard by a hearing examiner. Amarillo and Lubbock responded to that motion, and asserted there, as they do here, that the issue was far from decided and the Commission should hear evidence on the wisdom, or lack thereof, in applying system-wide cost of service to the West Texas Division. The examiner, however, issued a letter ruling that effectively precluded litigation on this issue:

> The issue of whether Atmos Energy may seek system-wide rates for the Atmos West Texas Division, *and whether the Commission may set rates on a system-wide basis,* is precluded from further litigation. *Accordingly, the parties are precluded from litigating the question of whether Atmos ' proposed rates should be established on a system-wide basis.* [Emphasis original]

The examiner explained that the issue of system-wide rates falls within the policy discretion of the Commission and the examiner believed there was a long standing policy allowing for such rates.[6] The examiner ultimately relied on rulings in several prior rate cases to support this view. One of those prior cases bares particular note.

GUD No. 9400 grew out of a requested rate increase in Atmos' Wes-Tex division, which includes the City of Dallas. Tex.R.R. Comm'n, Statement of Intent Filed by TXU Gas Company to Change Rates in the Company's Statewide Gas Utility System, GUD No. 9400, Final Decision (June 24, 2008). That request, like this one, sought system-wide rates. The Commission implemented system-wide rates over the City's objection, resulting in an appeal to the Third

---

rate cases. We do not find any Commission rules that specifically govern this practice which has the appearance of something akin to a partial motion for summary judgment.

[6] GURA itself requires that rates be "just and reasonable," not "unreasonably preferential, prejudicial, or discriminatory," but "equitable, and consistent in application to each class of consumer." GURA at §104.003. Nor can there be an "unreasonable difference concerning rates of services between localities." *Id.* at 104.004(c). To accomplish those ends, the Commission "may treat as a single class two or more municipalities that a gas utility serves" if the Commission considers that treatment to be appropriate. *Id.* at § 104.003. The examiners believed that the Commission has determined that system-wide rates are consistent with these statutory goals.

Court of Appeals. That case squarely faced the issue of whether there was substantial evidence supporting the findings for system-wide rates. *City of Dallas v. Railroad Commission of Texas*, 03-06-00580-CV, 2008 WL 4823225, at *8-10 (Tex.App.--Austin Nov. 6, 2008, no pet.). Noting the wide discretion of the Commission in its rate design, the court found substantial evidence to support the use of system-wide rates. *Id.*

Here, Amarillo and Lubbock appealed the interim ruling of the examiner to the Commissioners. The appeal was denied. Amarillo and Lubbock had pre-filed the testimony that they intended to introduce at the final hearing, which included several witnesses addressing the system-wide rate question.[7] On a motion by the West Texas Cities, the examiners later struck that testimony and exhibits.

As the rate case got underway, the parties reached a partial settlement agreement which resolved most of their issues. Atmos had sought a rate increase which would earn it an additional $9.7 million in revenue. Under the terms of the partial settlement, the parties agreed that the total additional revenue would be limited to $6.02 million. The settlement agreement contemplates, however, that Amarillo and Lubbock could continue to challenge the ruling on the system-wide increase, both before the Commission and into the court system. The partial settlement agreement has several additional terms relevant to our review.

The parties agreed to specific gas rates for different customer classifications in the Amarillo, Lubbock, and West Texas Communities rate jurisdictions, as well as the unincorporated areas in the division. These rates were stipulated as being consistent with

---

[7] That testimony included an expert witness, James Daniel, who believed that Atmos' proposal would raise rates in Amarillo and Lubbock by 22% to 27%, requiring them to pay $5.2 million more than the cost of providing services to those cities. By contrast, revenue from the West Texas Cities would see a net decrease. He concluded that the average cost to serve customers is $268 in Amarillo, $278 in Lubbock, but $344 in the West Texas Communities. These cost differences result from higher population densities in Amarillo and Lubbock. Another tendered expert, Michael Brosch, would have testified that Atmos has separate books and records that would allow it to calculate costs for each of the rate jurisdictions.

implementing a system-wide cost approach. They further agreed that these rates would continue through the pendency of this appeal. And while the case is on appeal, any additional rate increases would be addressed on a system-wide basis. If this appeal results in a remand to the Commission to re-hear the question of system-wide rates, the parties agreed that there could be no reimbursement for excess amounts collected during the pendency of the appeal. Instead, and at most, if the Commission reversed its preference for system-wide rates, there would be a new rate case which would prospectively adjust the system-wide rates implemented under the partial settlement agreement.

The Commission examiners accepted the terms of the partial settlement agreement and issued a proposal for decision with findings of fact and conclusions of law consistent with the agreement. The Commissioners then considered the case and issued a final order based on the proposal for decision and partial settlement agreement. Following an unsuccessful motion for rehearing before the Commission, Amarillo and Lubbock timely filed an appeal to a Travis County District Court. The trial court entered a judgment affirming the Railroad Commission in all respects and this appeal follows.[8]

**ISSUES FOR REVIEW**

Amarillo and Lubbock urge three issues on appeal. In Issue One, they contend the Commission violated the Administrative Procedure Act in denying them the right to present evidence on a contested issue. They contend this denial also violated their due process rights. In Issue Two, Amarillo and Lubbock contend the findings germane to system-wide rates are not supported by substantial evidence. As sub-parts to this issue, they argue that the Commission improperly considered prior final orders from other cases, and failed to issue proper conclusions

---

[8] This appeal was transferred to this court from the Third Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of that court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

of law.  In Issue Three, they contend that the Commission must provide a reasoned basis for changing its prior practice of allocating costs to the three rate jurisdictions and it failed to do so here.

The Commission and the other interested parties contest Amarillo and Lubbock's standing to pursue this appeal.  They complain that any opinion we might issue would be solely advisory because the partial settlement agreement precludes any charge-back of the amounts earned under the final order.  Moreover, a subsequent set of rates has been agreed upon by the parties taking effect April 1, 2014, which effectively precludes any prospective relief that might be gained from reversing the final order of the Commission below.  As standing is an issue that bears on our jurisdiction, we begin (and end) our inquiry there.

### STANDING

Standing is a prerequisite to subject-matter jurisdiction, which is essential to a court's power to decide a case.  *Bland Independent School District v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 443-44 (Tex. 1993). The general test for standing requires that there (a) must be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.  *Texas Ass'n of Business*, 852 S.W.2d at 446; *Board of Water Engineers of the State of Texas v. City of San Antonio*, 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955).  It has also been described as requiring that a "plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical."  *Fin. Commn. of Texas v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013).

Standing is a part of the "concept of justiciability which includes the questions of advisory opinions, mootness, and ripeness."  *McCarney v. Ford Motor Co*., 657 F.2d 230, 233

(D.C. Cir. 1981); *see also Norwood*, 418 S.W.3d at 580 (noting standing and other concepts of justiciability--advisory opinions, feigned and collusive cases, ripeness, mootness, political questions, and administrative questions--have been developed to identify appropriate occasions for judicial action), *citing* 13 Charles Alan Wright, et al., Federal Practice and Procedure § 3529 (3d ed. 2008).

We cannot set a gas utility's rate, nor ultimately decide whether system-wide rates are, or are not, appropriate. TEX.GOV'T CODE ANN. § 2001.174 (West 2016)(courts are limited to affirming agency decision in whole or part, or reversing and remanding for further proceedings); *Texas Alcoholic Beverage Commission v. Quintana*, 225 S.W.3d 200, 205 (Tex.App.--El Paso 2005, pet. denied)(court is limited to remanding proceeding back to agency if substantial evidence does not support findings). At most, we could reverse the decision below and remand for a new hearing before the Commission. But if we did so, the partial settlement agreement precludes any charge back for past revenues.

That would leave only the question of future revenue based on those rates. And if there were a continuing future stream of revenue based on the rates in this final order, we might view a reversal of the final order below differently. But we are informed that on February 27, 2014, Atmos, along with Amarillo and Lubbock, entered into another settlement agreement that set an entirely new set of rates to govern bills from April 1, 2014 forward.[9] We are provided a signed copy of the settlement agreement as an attachment to Atmos' appellate brief. An attachment to a brief, of course, is not an appropriate means to supplement the record. *Robb v. Horizon Communities Improvement Ass'n, Inc.*, 417 S.W.3d 585, 589 (Tex.App.--El Paso 2013, no

---

[9] The new rates, effective for any customer bill after April 1, 2014, are all higher than the 2012 rates, across all classes of customers (residential, commercial, industrial and public authority) and for both basic customer charges and consumption charges.

pet.)("It is well established that documents attached to an appellate brief which are not part of the record may generally not be considered by the appellate court."). But we are also provided certified copies of enacted ordinances from Amarillo, Lubbock, Channing, and Dalhart approving this new rate structure.[10] We do have the ability to take judicial notice of a municipal ordinance. TEX.R.EVID. 204; *Oncor Electric Delivery Company LLC v. City of Richardson, Texas*, 05-14-00843-CV, 2015 WL 4736827, at \*3 (Tex.App.--Dallas Aug. 11, 2015, no pet. hist.); *City of Farmers Branch v. Ramos,* 235 S.W.3d 462, 469 (Tex.App.--Dallas 2007, no pet.)(appellate court took judicial notice of city ordinance after appellant provided a copy of ordinance verified by the city secretary); *Flores v. State*, 33 S.W.3d 907, 914 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd)("any Texas court may, upon its own motion or the motion of a party, take judicial notice of a municipal ordinance" under TEX.R.EVID. 204). We may also take note of events occurring after a case arrives at this court which affects our jurisdiction. *See* TEX.R.EVID. 201; *Freedom Communications, Inc. v. Coronado,* 372 S.W.3d 621, 623-24 (Tex. 2012)(citing Texas Rule of Evidence 201 and noting that appellate courts may take judicial notice of relevant facts outside record to determine jurisdiction); *Bridgeport Independent School District v. Williams*, 447 S.W.3d 911, 916 (Tex.App.--Austin 2014, no pet.)(taking notice of letter not in the appellate record as it was undisputed and impacted court's jurisdiction).

The terms of the prior partial settlement, and the more recently enacted ordinances, hit something of a trifecta for justiciability--implicating mootness, ripeness, and the prohibition on advisory opinions.

---

[10] Amarillo, Tex. Ordinance No. 7452 (March 18, 2014); Lubbock, Tex. Ordinance 2014-00033 (March 27, 2014); Channing, Tex. Ordinance No. 3-2014-115 (March 17, 2014); and Dalhart, Tex. Ordinance 2014-04 (March 11, 2014). Amarillo and Lubbock's Reply Brief does not dispute the existence of these ordinances.

*Mootness*

A case is rendered moot when: (1) it appears that a party seeks to obtain a judgment upon some controversy, when in reality none exists; or (2) a party seeks a judgment upon some matter which cannot have a practical legal effect upon a then existing controversy. *Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.--El Paso 2010, no pet.). That is to say, when an actual controversy no longer exists between the parties, "the decision of an appellate court would be a mere academic exercise." *Beltran*, 324 S.W.3d at 110, *quoting Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex.App.--El Paso 1994, no writ). Mootness can arise from events occurring after a case is appealed. *Olson v. Comm'n for Lawyers Discipline,* 901 S.W.2d 520, 522 (Tex.App.--El Paso 1995, no pet).

In *Olsen*, for instance, a lawyer challenged his suspension from the practice of law, but died before the appeal was submitted. We held his death mooted the appeal because the relief sought--reinstatement of his law license--was no longer possible. *Id*. at 522. Similarly, in *Molina v. State*, 08-10-00218-CR, 2011 WL 5398174, at *2-3 (Tex.App.--El Paso Nov. 9, 2011, no pet.)(not designated for publication), we held that a party's suit seeking to have certain evidence tested for DNA was moot when subsequent events showed the evidence had been lost and was not available for testing. We raised the issue *sua sponte* because it is a matter of jurisdiction. *Id*., *citing Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.,* 971 S.W.2d 439, 442 (Tex. 1998)(justiciability doctrines such as ripeness, as well as standing and mootness, lie in the prohibition on advisory opinions, which in turn stem from the separation of powers doctrine set forth in Article 2, Section 1 of the Texas Constitution).

The partial settlement, in conjunction with the subsequent ordinances enacting a new set of rates, renders this dispute moot. A reversal of the judgment and order below would not

impact any of the prior bills that Amarillo and Lubbock customers paid. Nor would it result in anything other than a remand to Commission who then would be asked to conduct a hearing on the hypothetical question of what the proper rate design should have been between October 1, 2012 (the effective date for GUD 10174) and April 1, 2014 (the effective date for new rates under the ordinances). As this is nothing but an academic exercise, we doubt the Commission would be inclined to spend its resources deciding the matter. And even if it did, any rate structure would have no practical effect on Atmos' revenues or the bills paid by affected customers.

There is an exception to the mootness doctrine when a claim is "capable of repetition yet evading review." *In re Uresti*, 377 S.W.3d 696 (Tex. 2012). This exception applies when (1) the challenged action was of such a short duration that it could not be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.*; *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex. 2001). The exception does not apply here. But for Amarillo and Lubbock's approval of new rates in 2014, we might have been able to resolve the fairness of the process leading to the 2012 rates; there was nothing inherently short about the time period that precluded judicial review. Moreover, there is no indication that if a future rate case reaches the Commission that it would handle the rate case in the same fashion, or issue identical findings of facts and conclusion of law such as are being challenged here.

Amarillo and Lubbock argue that leaving the final order in place would lead the Commission to apply system-wide rates in future rate cases. But we have found no Commission rules that would automatically apply the rationale of this final order in the future. And Amarillo and Lubbock's very position belies that prospect. They contend the Commission has abruptly

-12-

changed its prior practice of developing rates separately within the three different rate jurisdictions. The Commission is apparently not bound to always follow what it did in the past. We are not convinced that if a future rate case is ever filed that Amarillo and Lubbock could not re-urge its challenge to system-wide rates. And if they are unsuccessful, they can litigate a challenge on the merits of that dispute. But the procedural challenges to the final order below became moot once the potential for prospective relief ended with a completely new set of rates taking effect on April 1, 2014.

*Ripeness*

The Commission directs us to *Railroad Commission of Texas v. CenterPoint Energy Resources Corp.*, No. 03-13-00533-CV, 03-13-00534-CV, 03-13-00535-CV, 2014 WL 4058727 (Tex.App.--Austin Aug. 14, 2014, no pet.)(mem. op.) for the contention that this dispute is not ripe. In those cases, the issue was whether certain undocumented travel expenses could be considered as costs in deciding a rate tariff. *Id.* at *2. The travel expenses that had been disallowed were apparently so small that had they been considered, they would not have changed the final tariff. *Id.* at *1, n.1. The utility had also withdrawn its request that the expenses even be considered. The issue only surfaced because the agency's final order required that in future cases any expenses had to be adequately documented. The utility appealed that requirement, arguing that the order affected how they documented travel expenses on an on-going basis in anticipation of future rate cases. The Third Court of Appeals concluded the issue was not ripe. There was no imminent risk that the final order would be enforced before another rate case arose, and when and if it did arise, the court was unconvinced it would affect the amount of any tariff rate. *Id.* at * 3-4.

The ripeness doctrine is often identified in dealing with agency determinations. In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court explained that the ripeness doctrine's basic rationale "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." To this end, the court has repeatedly held that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)(internal quotation marks omitted).

Those same concerns apply here. Any decision that we might reach on the procedural fairness of the rate design in this final order might only be relevant to some future rate case before the Commission, and then only if the future rate case is handled in the same fashion as was done here. But this is the sort of hypothetical challenge over a question of administrative policy that the ripeness doctrine seeks to avoid.

*Advisory Opinion*

The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Texas Ass'n of Bus.*, 852 S.W.2d at 444. Another hallmark of an advisory opinion is that the underlying issue involves "no actual, genuine, live controversy, the decision of which can definitely affect existing legal relations." *Reuter v. Cordes-Hendreks Coiffures, Inc.*, 422 S.W.2d 193, 196 (Tex.Civ.App.--Houston [14th Dist.] 1967, no writ).

Based on the terms of the partial settlement agreement, and the advent of an entirely new rate structure as of April 1, 2014, we fail to see how any decision of ours might provide anything

other than an advisory opinion to the parties as to the propriety of the procedures used to determine a set of rates in the past. If we reverse the Commission's final order, Atmos would not be obligated to return any prior revenues for gas service to its Amarillo and Lubbock customers. If the Commission re-decided the rate case, it would at best an academic question because it would not undo the 2014 ordinances implementing new rates. Without the potential for prospective relief, Amarillo and Lubbock lack standing to assert the claims that they do. *See O'Shea v. Littleton,* 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Accordingly, we decline to wade into the procedural thicket of a rate case which at this point only addresses rates that have all been superseded. Without reaching the merits as to Issues One, Two, or Three, we dismiss the appeal for want of jurisdiction.

May 25, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.