

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| COMMISSION FOR LAWYER DISCIPLINE, | § | No. 08-22-00217-CV |
| | § | Appeal from the |
| Appellant, | | |
| | § | 368th Judicial District Court |
| v. | | |
| | § | of Williamson County, Texas |
| BRENT EDWARD WEBSTER, | | |
| | § | (TC# 22-0594-C368) |
| Appellee. | | |

**O P I N I O N**

In wake of the 2020 presidential election, the State of Texas attempted to sue several states for purported violations of the Electors Clause. 84 professional-misconduct grievances against the Texas-licensed attorneys on the pleadings followed. One such grievance was against First Assistant Attorney General, Brent Edward Webster. In this case arising from that complaint, the Commission for Lawyer Discipline (the Commission) appeals the trial court's grant of Webster's plea to the jurisdiction. We reverse.[1]

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals to the extent they might conflict with our own. *See* TEX. R. APP. P. 41.3.

## BACKGROUND

### A. The attorney-discipline process in Texas

The Texas Supreme Court supervises the conduct of attorneys admitted to practice in Texas. TEX. GOV'T CODE ANN. § 81.072(a). To advance this power, the Texas Legislature enacted the State Bar Act, which, among other things, created the State Bar of Texas to aid the Texas Supreme Court in regulating the practice of law, including by overseeing attorney discipline. *See id.* §§ 81.001 *et seq.*

The Commission is a standing committee of the State Bar that administers the Texas attorney-discipline system. *Id.* § 81.076. The Commission also selects and oversees the Office of Chief Disciplinary Counsel (CDC), which represents the Commission in attorney-disciplinary litigation. *Id.* § 81.076(g). The CDC administers the State Bar's grievance procedure as outlined in the Texas Rules of Disciplinary Procedure. *Id.*

Every attorney admitted to practice in Texas is subject to the Texas Disciplinary Rules of Professional Conduct and Texas Rules of Disciplinary Procedure, both promulgated by the Texas Supreme Court. *Id.* §§ 81.072(b), (d); *see id.* § 81.071 ("Each attorney admitted to practice in this state . . . is subject to the disciplinary and disability jurisdiction of the supreme court and the Commission for Lawyer Discipline, a committee of the state bar."). These rules define proper professional conduct and provide the mechanism by which grievances are processed, investigated, and prosecuted. Commission for Lawyer Discipline Annual Report, State Bar of Texas, Overview of the Attorney Discipline Process 13 (2022), https://www.texasbar.com/AM/Template.cfm?Section=Content_Folders&ContentID=57786&Template=/CM/ContentDisplay.cfm.

Anyone may file a grievance against a Texas attorney by filing a written form with the CDC, which initiates the attorney-disciplinary process. TEX. RULES DISCIPLINARY P. 1.06(R); *Comm'n for Lawyer Discipline v. Stern*, 355 S.W.3d 129, 134 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Upon receiving a grievance, the CDC must first classify it as either a complaint or an inquiry. TEX. RULES DISCIPLINARY P. 2.10. If the grievance alleges professional misconduct on its face, it is classified as a complaint and sent to the lawyer for a response. *Id.*; TEX. RULES DISCIPLINARY P. 106(G). If not—*i.e.*, if the grievance alleges conduct that, even if true, does not constitute professional conduct—it is classified as an inquiry and dismissed. TEX. RULES DISCIPLINARY P. 2.10. However, the person who filed the grievance may, within 30 days, appeal the CDC's classification decision to the Board of Disciplinary Appeals (BODA). *Id.* If BODA reverses the classification decision, the grievance is sent back to the CDC, where it is processed as a complaint. TEX. RULES DISCIPLINARY P. 7.08(C).

Once a grievance is classified as a complaint, the respondent attorney has 30 days from its receipt to respond to the allegations. TEX. RULES DISCIPLINARY P. 2.10. The CDC must then determine whether there is just cause to believe professional misconduct has occurred and, if so, proceed with the complaint within 60 days of the attorney's response deadline. TEX. RULES DISCIPLINARY P. 2.12. As part of its investigation, the CDC, with the Committee chair's approval, may convene an investigatory panel and issue subpoenas to determine whether just cause exists. *Id.*

If the CDC determines there is no just cause to proceed on a complaint, the case is presented to a summary disposition panel, which then makes an independent determination regarding just cause. TEX. RULES DISCIPLINARY P. 2.13. However, if the CDC (or the summary disposition panel) determines there is just cause, the CDC notifies the attorney of conduct it contends violates the

disciplinary rules and the purported rule violations. TEX. RULES DISCIPLINARY P. 2.14(D). The attorney has 20 days to notify the CDC whether he elects to have his case heard before an evidentiary panel of the grievance committee or by a district court, with or without a jury. TEX. RULES DISCIPLINARY P. 2.15. If the attorney elects the district court option, the Commission must file its suit within 60 days of his election. TEX. RULES DISCIPLINARY P. 3.01. The Commission bears the burden to prove the allegations of professional misconduct by a preponderance of the evidence. TEX. RULES DISCIPLINARY P. 3.08.

## B. Texas v. Pennsylvania

On December 7, 2020, the State of Texas attempted to invoke the original jurisdiction of the United States Supreme Court by suing the Commonwealth of Pennsylvania and the States of Georgia, Michigan, and Wisconsin. Counsel for Texas included Webster, Attorney General Ken Paxton (as counsel of record), and Lawrence Joseph, Special Counsel to the Attorney General of Texas. Specifically, the State of Texas filed:

- a Motion for Leave to File a Bill of Complaint,[2] attaching the Bill of Complaint and Brief in Support of Motion for Leave;

- a Motion for Expedited Consideration of the same;

- a Motion for Preliminary Injunction and Temporary Restraining Order or, Alternatively, for Stay and Administrative Stay;

- a Motion to Enlarge Word-Count Limit and Reply in Support of Motion for Leave to File Bill of Complaint; and

- a Reply in Support of Motion for Preliminary Injunction and Temporary Restraining Order or, Alternatively, for Stay and Administrative Stay.

---

[2] The Supreme Court's procedural rules require that any party seeking to invoke the Court's Article III original jurisdiction must first file a motion for leave to file before its initial pleading. U.S. Sup. Ct. RR. 17.1, .3.

4

First, Texas alleged that changes made by non-legislative actors to the defendant States' election procedures in light of the COVID-19 pandemic violated the Constitution's Electors Clause. U.S. CONST. art. II, § 1, cl. 2. Second, Texas claimed these alterations created different voting standards within the States, which violated the "one-person, one-vote" principle enshrined in the Equal Protection Clause. U.S. CONST. amend. XIV, § 1. Finally, Texas alleged these alterations rendered election procedures fundamentally unfair in violation of the Due Process Clause. *Id.*

Texas argued it had standing to bring these claims because the defendant States purportedly injured two of Texas's interests: (1) its interest in who is elected as Vice President and thus can break Senate ties; and (2) its interest as *parens patriae* to protect the interest of its own electors. However, on December 11, 2020, the Supreme Court denied its motion for leave to file a bill of complaint for lack of standing, concluding "Texas has not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections" and dismissing all pending motions as moot. *Texas v. Pennsylvania*, 141 S. Ct. 1230 (2020).

### C. The grievance against Webster

After Texas filed *Texas v. Pennsylvania*, the CDC received 81 grievances against Paxton and three against Webster. All but four—three against Paxton and one against Webster—were ultimately dismissed. This case arises from the one remaining grievance against Webster.

The CDC received that grievance on March 11, 2021, from Brynne VanHettinga, an inactive Texas-licensed attorney. VanHettinga alleged the *Texas v. Pennsylvania* pleadings included, among other things, "manufactured 'evidence,'" "specious legal arguments," "unsupported factual assertions," "unfounded claims," and "conspiracy theories," and that Webster "violated [his] oath[] as [an] attorney[]" and a public servant. VanHettinga asserted Webster's

5

conduct violated the Texas Disciplinary Rules of Professional Conduct, including Rule 3.01 (frivolous lawsuits and false statements), 3.03(a)(1) (false statement of material fact or law to a tribunal), 8.04(a)(3) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4.01 cmt. 5 (knowingly assisting a client in the commission of a criminal or fraudulent act).

The CDC initially classified VanHettinga's grievance as an inquiry and dismissed it as such. However, VanHettinga appealed the classification to BODA, which granted the appeal and reversed the initial classification, stating that the grievance alleged a possible violation of Rules 3.01 and 3.03. BODA thus returned VanHettinga's grievance to the CDC as a complaint for investigation and determination of just cause. The CDC notified Webster and requested his response. Webster responded,[3] outlining the circumstances leading up to and legal theories behind the lawsuit, challenging VanHettinga's allegations, and raising defenses, including the separation of powers doctrine. Webster also submitted a supplemental response after VanHettinga amended her initial grievance.

The CDC then set the complaints against Paxton and Webster for a joint hearing before an investigatory-hearing panel in Travis County. Webster filed a motion to dismiss or alternatively to transfer venue of the panel and a motion to recuse panel members; however, the grievance committee chair denied the motions. On January 5, 2022, the grievance committee held the investigatory hearing, at which it heard testimony from the complainants. Webster did not appear or provide testimony, but he was represented by counsel who examined VanHettinga and offered argument on his behalf. Two days later, the CDC informed Webster that "[b]ased on the evidence," the investigatory panel "believes there is credible evidence to support a finding of Professional

---

[3] Given the similarities in complaints, Webster filed a joint response with Paxton.

Misconduct for a violation of Rule[] 8.04(a)(3)" and "recommends a sanction of Public Reprimand." The CDC offered Webster the opportunity to accept the recommended sanction but stated if he declined, the Commission would initiate a disciplinary action against him before either an evidentiary panel or trial court. Webster rejected the proposed sanction and elected to have his disciplinary action heard in district court.

On May 6, 2022, the CDC filed the Commission's Original Disciplinary Petition against Webster in Williamson County district court. It alleged Webster made the following six misrepresentations in the *Texas v. Pennsylvania* pleadings:

1. an outcome determinative number of votes were tied to unregistered voters;

2. votes were switched by a glitch with Dominion voting machines;

3. state actors "unconstitutionally revised their state's election statutes;"

4. "illegal votes" had been cast that affected the outcome of the election;

5. Texas had "uncovered substantial evidence . . . that raises serious doubts as to the integrity of the election process in Defendant States;" and

6. Texas had standing to bring these claims before the United States Supreme Court.

The Commission claimed Webster's "representations were dishonest" and "were not supported by any charge, indictment, judicial finding, and/or credible or admissible evidence," and Webster "failed to disclose to the Court that some of his representations and allegations had already been adjudicated and/or dismissed in a court of law." As a result, the Commission contended the defendants "were required to expend time, money, and resources to respond to the misrepresentations and false statements contained in these pleadings and injunction requests even though they had previously certified their presidential electors based on the election results prior to the filing of [Webster's] pleadings." Accordingly, the Commission alleged Webster's actions

amounted to a violation of Rule 8.04(a)(3): "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Webster responded by filing his answer, defenses, and plea to the jurisdiction. His plea to the jurisdiction sought dismissal on two grounds: (1) as a violation of the separation of powers doctrine; and (2) sovereign immunity. The Commission filed a response, and the court held a hearing on the plea. The court granted Webster's plea, stating "the separation of powers doctrine deprives this court of subject-matter jurisdiction," and dismissing the Commission's claims with prejudice.[4] The Commission appealed.

## STANDARD OF REVIEW

A separation of powers doctrine violation defeats a court's subject-matter jurisdiction, as does sovereign immunity. *Tex. Dep 't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (sovereign immunity); *Tex. Ass'n of Bus. v. Tex. Air Ctr. Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (separation of powers). A defendant may challenge the court's subject-matter jurisdiction through a plea to the jurisdiction. *Flores v. Tex. Dep't of Criminal Justice*, 634 S.W.3d 440, 450 (Tex. App.—El Paso 2021, no pet.) (citing *Miranda*, 133 S.W.3d at 225–26). The plea can attack both the plaintiff's allegations in the pleadings as well as the existence of jurisdictional facts by attaching evidence to the plea. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). Here, Webster did not challenge the existence of jurisdictional facts, so we review his plea as a matter of law. *Flores*, 634 S.W.3d at 450 (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)).

In reviewing a plea to the jurisdiction, we liberally construe the pleadings in the plaintiff's favor. *Heinrich*, 284 S.W.3d at 378 (citation omitted). We review a trial court's ruling on a plea to

---

[4] The State of Texas also filed a petition in intervention, which the Commission moved to strike. The trial court did not rule on the State's motion before granting Webster's plea and dismissing the Commission's claims.

8

the jurisdiction de novo. *Miranda*, 133 S.W.3d at 226 (Tex. 2004).

## ANALYSIS

### A. The Commission's jurisdictional allegations

Because Webster's plea to the jurisdiction challenges the pleadings, we must first determine whether the Commission alleged facts that affirmatively demonstrate the court's jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). The Commission's petition states "[t]he cause of action and the relief sought in this case are within the jurisdictional requirements of this Honorable Court." It specifies the Commission is suing Webster under the State Bar Act, the Disciplinary Rules of Professional Conduct, and the Texas Rules of Disciplinary Procedure, and states Webster's "acts and omissions . . . as hereinafter alleged, constitute professional misconduct." The petition then describes relevant factual background to *Texas v. Pennsylvania* before outlining the six alleged misrepresentations listed above the Commission contends violate Rule 8.04(a)(3). The petition also states venue is proper in Williamson County because that is Webster's county of residence.

Consistent with Webster's election, the Commission brought its suit in a district court in his county of residence. TEX. RULES DISCIPLINARY P. 2.15, 3.03. Its petition meets all requirements of a disciplinary petition filed in a district court, including "[a] description of the acts and conduct that gave rise to the alleged Professional Misconduct" and "[a] listing of the specific rules of the Texas Disciplinary Rules of Professional Conduct allegedly violated by the acts or conduct." *See* TEX. RULES DISCIPLINARY P. 3.01 (listing requirements of a disciplinary petition filed in district court). Construing the pleadings in the Commission's favor, we conclude the Commission has alleged facts demonstrating the court's jurisdiction over the case under the Texas Rules of Disciplinary Procedure. *See* TEX. GOV'T CODE ANN. § 81.071 ("Each attorney admitted to practice

9

in this state . . . is subject to the disciplinary and disability jurisdiction of the supreme court and the Commission for Lawyer Discipline, a committee of the state bar.").

### B. Separation of powers doctrine

Webster contends the Commission's disciplinary proceeding violates the separation of powers doctrine because the Commission—a statutorily created agent of the judicial branch—has invaded the exclusive power of the Attorney General—part of the executive branch—to represent the State in civil litigation. The question presented is whether the Commission's disciplinary proceeding against Webster unduly interferes with the Attorney General's exercise of its constitutionally assigned core powers.

Article II, section 1 of the Texas constitution outlines the separation of powers doctrine:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

The three branches of government do not, however, "operate with absolute independence," and Texas courts "have instead 'long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle.'" *Martinez v. State*, 503 S.W.3d 728, 734 (Tex. App.—El Paso 2016, pet. ref'd) (quoting *Tex. Comm'n on Env't Quality v. Abbott*, 311 S.W.3d 663, 672 (Tex. App.—Austin 2010, pet. denied)). The "proper interpretation" of the separation of powers doctrine is therefore "dictated by its context." *Coates v. Windham*, 613 S.W.2d 572, 576 (Tex. App.—Austin 1981, no writ). While it "prohibits a transfer of a whole mass of powers from one department to another and . . . a person of one branch from exercising a power historically or inherently belonging to another department," it cannot be interpreted to "prevent[] cooperation or coordination between two or more branches of government, hindering altogether

10

any effective governmental action." *Id.* Courts take a "flexible approach" in considering whether a separation of powers violation has occurred, accepting some degree of "commingl[ing] the functions of the Branches" so long as the challenged act "pose[s] no danger of either aggrandizement or encroachment." *Martinez*, 503 S.W.3d at 734 (quoting *Abbott*, 311 S.W.3d at 671–72).

A separation of powers violation happens in one of two ways. *Id.* The first is when one branch "assumes, or is delegated, to whatever degree, a power that is more 'properly attached' to another branch." *Abbott*, 311 S.W.3d at 672 (quoting *Jones v. State*, 803 S.W.2d 712, 715–16 (Tex. Crim. App. 1991) (en banc)). The second is "when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *Id.* (quoting *Jones*, 803 S.W.2d at 715–16). Only the second is at issue here.

To determine whether an undue-interference separation of powers violation has occurred, courts examine the scope of constitutional powers held by the first governmental actor and then consider the impact of the first branch's conduct on the second branch's ability to exercise its own constitutionally derived powers. *Id.* (citing *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990)) (en banc). Here, we thus consider the scope of the Commission's constitutional powers as an agent of the judiciary established by the legislature and the impact, if any, of its disciplinary proceeding on the Attorney General office's ability to effectively exercise its constitutional powers as a part of the executive branch.

The judicial branch has the "inherent power to regulate the practice of law in Texas for the benefit and protection of the justice system and the people as a whole." *In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768, 769 (Tex. 1999). This power is derived from Article II, Section I of the Texas Constitution, which grants the Supreme Court of Texas the authority to regulate judicial

11

affairs and direct the administration of justice in the judiciary. *Id.* (citing *The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994)). That includes the Court's "obligation" to regulate the admission and practice of Texas attorneys because these activities are "inextricably intertwined with the administration of justice." *Gomez*, 891 S.W.2d at 245. Indeed, "the Court *must* have the power to regulate these activities in order to fulfill its constitutional role." *Id.* (emphasis added). The Legislature acknowledged the Court's "fundamental authority" to regulate the practice of law by enacting the State Bar Act to aid the Court in carrying out this inherent power. *Id.* (citing TEX. GOV'T CODE ANN. § 81.011(b)); *see* TEX. GOV'T CODE ANN. §§ 81.024(a) (clarifying the Court's supervisory role over the State Bar), .076 (outlining the Commission's duties and composition). The Commission's duties, described above, include administering the Texas attorney-discipline system pursuant to statutory and Court rules. TEX. GOV'T CODE ANN. § 81.076

The Attorney General is a member of the executive department and has the constitutional authority to "represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party."[5] TEX. CONST. art. IV, § 22. His "primary duties are to render legal advice in opinions to various political agencies and to represent the State in civil litigation." *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001) (citing TEX. CONST. art. IV, §§ 1, 22; TEX. GOV'T CODE ANN. § 402.021). As the State's chief legal officer, the Attorney General has "broad discretionary power in carrying out his responsibility to represent the State." *Id.* (citing *Terrazas v. Ramirez*, 829 S.W.2d 712, 722 (Tex. 1991) (orig. proceeding)). However, "the Attorney General can only act within the limits of the Texas Constitution and statutes, and courts cannot enlarge the Attorney General's powers." *Id.* (citing *Terrazas*, 829 S.W.2d at 735 (Cornyn, J., concurring)).

---

[5] The Attorney General may act through his assistants. *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988). If he is "absent or unable to act," the First Assistant Attorney General (Webster's position) performs his duties that are prescribed by law. TEX. GOV'T CODE ANN. § 402.001(a).

12

Webster urges that the Commission's disciplinary proceeding unduly interferes with the Attorney General's exercise of its core powers, namely its exclusive control over representing the State in civil appellate litigation. He insists the disciplinary action is "a thinly veiled effort to second-guess" the Attorney General's decision to file *Texas v. Pennsylvania* (though he offers no evidence of this purported pretext). Because the Attorney General has "broad discretionary power" in representing the State's interests in civil litigation, Webster contends the Commission's disciplinary proceeding represents "a profound threat to the separation of powers."

But nowhere in the Commission's disciplinary proceeding does it challenge the Attorney General's decision to *file* the suit. Instead, it points directly to the allegations within the *Texas v. Pennsylvania* pleadings it contends violate Rule 8.04(a)(3). Webster's conclusory argument otherwise is not supported by the pleadings, which we must construe liberally in the Commission's favor. *Heinrich*, 284 S.W.3d at 378 (citation omitted). The authorities Webster cites related to the Attorney General's decision to exercise his judgment in *bringing* a suit are thus inapplicable. *See, e.g.*, *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924) (noting the Attorney General alone has the duty to exercise "judgment and discretion" in bringing suits on behalf of the State); *Lewright v. Bell*, 63 S.W. 623, 623–24 (Tex. 1901) (concluding courts cannot compel Attorney General to initiate suit, as that decision involves his professional judgment and discretion).

We are also not persuaded by Webster's argument that the Attorney General's "broad discretion" to represent the State in civil litigation renders the Commission's disciplinary proceeding undue interference with his exercise of core powers. This "broad discretion" is not unlimited, as "the Attorney General can only act within the limits of the Texas Constitution and statutes." *Perry*, 67 S.W.3d at 92. And though the Texas Disciplinary Rules of Professional

Conduct are not statutory, they "should be treated like statutes." *O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 399 (Tex. 1988). Thus, this "broad discretion" is plainly limited by adherence to the disciplinary rules. Indeed, the Attorney General must also comply with other aspects of the State Bar Act, including its membership dues requirement. *See Osborne v. Paxton*, No. 03-15-00374-CV, 2016 WL 3240211, at *3 n.7 (Tex. App.—Austin June 9, 2016, no pet.) (mem. op.) ("[R]equiring Paxton to pay dues to maintain his law license does not amount to the State Bar exercising authority over the office of the Attorney General."). The same limitation on the Attorney General applies to his assistants. *See Cofer*, 754 S.W.2d at 124. No amount of discretion in representing the State in civil litigation would permit an executive-branch attorney to bypass the Commission's disciplinary process if he engaged in alleged professional misconduct.

Finally, Webster devotes significant briefing to defending the veracity of his alleged misrepresentations. However, this discussion concerns the merits of the disciplinary action against him; it has no bearing on the jurisdictional question before us and would be inappropriate to address at this stage. *See Amarillo v. R.R. Comm'n of Tex.*, 511 S.W.3d 787, 796 (Tex. App.—El Paso 2016, no pet.) ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties.").

Webster has not shown how the Commission's disciplinary proceeding unduly interferes with the executive function of the Attorney General's office. His argument appears to be that to effectively exercise the Attorney General's core powers, the Attorney General and his assistants must be exempt from the lawfully created process addressing attorney conduct that allegedly violates professional disciplinary rules. That cannot be. Though Webster insists he and other executive-branch attorneys are still subject to professional discipline through a court's inherent sanction power and "external checks" through political and legislative processes, those

mechanisms do not preclude the Commission's authority to administer the attorney-discipline system in the state; the processes are not mutually exclusive. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT, Preamble: Scope ¶ 15 ("Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty."). Indeed, the Texas Supreme Court has endorsed the uncontroversial principle that "all attorneys" are subject to the professional disciplinary processes, procedures, and standards of review to "ensure ethical lapses are disciplined." *Brewer v. Lennox Hearth Products, LLC*, 601 S.W. 3d 704, 723 n.76 (Tex. 2020). Exempting an entire category of attorneys from the State's disciplinary rules would be contrary to precedent, both in Texas[6] and elsewhere.[7] *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) ("States traditionally have exercised extensive control over the professional conduct of attorneys. The ultimate objective of such control is the protection of the public, the purification of the bar and prevention of recurrence." (cleaned up)).

In sum, the Commission's proceeding "pose[s] no danger of either aggrandizement or encroachment" on the executive branch. *Martinez*, 503 S.W.3d at 734. Webster is not exempt from the judiciary's constitutional obligation to regulate the practice of Texas attorneys simply

---

[6] *See, e.g.*, Order of the Supreme Court of Texas, *In re Daniel C. Morales*, Misc. Docket No. 03-9205 (Dec. 15, 2003) (accepting former Attorney General's resignation in lieu of discipline); *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 7 (Tex. Crim. App. 1990) (en banc) ("[A] prosecutor who violates ethical rules is subject to the disciplining authority of the State Bar like any other attorney.").

[7] *See, e.g.*, *In re Klein*, 311 P.3d 321, 393, 399 (Kan. 2013) (suspending former Kansas Attorney General from practicing law in state for professional misconduct); *Massameno v. Statewide Grievance Committee*, 663 A.2d 317, 337 (Conn. 1995) (concluding that the separation of powers doctrine does not alter the obligation and right of judicial branch to investigate and discipline prosecutors for professional misconduct). Indeed, states have long carried out attorney-misconduct proceedings even in cases involving a high-ranking federal government official. *In re Jeffrey B. Clark*, No.'s. 22-MC-0096, 22-MC-0117, 23-MC-0007 2023 WL 3884119, at *14 n.13 (D.D.C. June 8, 2023) (mem. op.) (collecting cases, including *Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768, at *3 (Ark. App. Jan. 19, 2001) (unpublished) and *In re Nixon*, 53 A.D.2d 178, 182 (N.Y. App. Div. 1976)).

because he serves in the Attorney General's office.[8] The trial court's conclusion that the separation of powers doctrine defeated subject-matter jurisdiction was thus error, and the Commission's issue on appeal is sustained.

### C. Sovereign immunity

Webster also contends the Commission's suit is barred by sovereign immunity because he appeared on the *Texas v. Pennsylvania* filings in his official capacity so the State is the real party in interest.[9] The Commission responds that its disciplinary action is against Webster personally as a Texas-licensed attorney, not in his official capacity as First Assistant Attorney General, and in any event, a disciplinary proceeding against a Texas-licensed attorney is not a suit against the State subject to sovereign immunity. The Commission also argues sovereign immunity is not implicated because its proceeding targets Webster's license to practice law, and that is not an interest sovereign immunity protects, even among executive-branch attorneys.

Texas has long recognized the doctrine of sovereign immunity: that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). Absent an express waiver of sovereign immunity, the State and its agencies are generally immune from suit. *Paxton v. Waller Cnty.*, 620 S.W.3d 843, 847 (Tex. App.—Amarillo 2021, pet. denied) (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*,

---

[8] To the extent Webster attempts to argue the political-question aspect of the separation of powers doctrine renders this case nonjusticiable, that argument fails for the same reasons; the Commission's proceeding does not inappropriately encroach on the executive branch's constitutional authority over the representation of the State in civil litigation. *See Van Dorn Preston v. M1 Support Services, L.P.*, 642 S.W.3d 452, 455 (Tex. 2022) (citing *American K-9 Detection Servs. v. Freeman*, 556 S.W.3d 246 (Tex. 2018)).

[9] The trial court did not explicitly rule on Webster's sovereign immunity issue, nor did the Commission raise it in its appellate brief. However, because Webster contends he is entitled to sovereign immunity and the argument is jurisdictional, we must consider it here. *See Dallas Metrocare Services v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (citing *Rusk State Hospital v. Black*, 392 S.W.3d 88, 94 (Tex. 2012)) ("[A]n appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all.").

354 S.W.3d 384, 388 (Tex. 2011)). Sovereign immunity likewise bars suits against public officials sued in their official capacities because the State is effectively the real party in interest such that its agent "enjoy[s] the sovereign's immunity 'derivatively.'" *GTECH Corp. v. Steele*, 549 S.W.3d 768, 784 (Tex. App.—Austin 2018), *aff'd sub nom. Nettles v. GTECH Corp.*, 606 S.W.3d 726 (Tex. 2020) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011)). Regardless of whether a suit is brought explicitly against a public official in his official capacity, "it is the substance of the claims and relief sought that ultimately determine whether the sovereign is a real party in interest and its immunity thereby implicated." *Id.* at 785. But sovereign immunity comes into play only if Webster has met an initial burden of establishing that the Commission's claims actually implicate that immunity. *See id.* at 774.

To determine whether a defendant is immune, courts consider "the 'nature and purposes' of sovereign immunity." *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017) (quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432 (Tex. 2016)). "[T]he stated reasons for immunity have changed over time," evolving from "the English legal fiction that the King can do no wrong[.]" *Wasson Interests*, 489 S.W.3d at 431 (cleaned up). The "modern justification" for sovereign immunity is to "protect[] the public fisc." *Heinrich*, 284 S.W.3d at 375; *see also Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 123 (Tex. 2015) ("Sovereign immunity . . . was designed to guard against the 'unforeseen expenditures' associated with the government's defending lawsuits and paying judgments that could hamper government functions by diverting funds from their allocated purposes." (internal quotations omitted)). Like the separation of powers doctrine, sovereign immunity also "maintains equilibrium among the branches of government by honoring 'the allocation of responsibility' for resolving disputes with the state." *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 740

17

(Tex. 2019) (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 416 (Tex. 1997) (Hecht, J., concurring)). Thus, if a suit "seeks relief that would control state action," sovereign immunity is implicated. *GTECH Corp.*, 549 S.W.3d at 786 (citing *Ex parte Springsteen*, 506 S.W.3d 789, 797 (Tex. App.—Austin 2016, pet. denied)). In other words, government entities and officials are immunized from suits that seek to restrain their "exercise of discretionary statutory or constitutional authority." *Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Env't Quality*, 307 S.W.3d 505, 514 (Tex. App.—Austin 2010, no pet.).

The Commission's disciplinary proceeding against Webster is not subject to sovereign immunity for several reasons. First, the Commission's claims clarify the State is not the real party in interest. Even ignoring the form of the pleadings, the substance of the Commission's petition targets Webster personally, not in his official capacity. For example, the Commission seeks "a judgment of professional misconduct" against Webster, something that affects only his license to practice law in Texas and has no effect on the State. Though Webster contends he could have filed the pleadings in *Texas v. Pennsylvania* only as a member of the Attorney General's office, again, it is not the filing of that suit that the Commission's disciplinary proceeding targets but specific alleged misrepresentations in its pleadings. Contrary to Webster's assertion that the Commission's suit "arises from the decision of the Attorney General and First Assistant to file the *Texas v. Pennsylvania* lawsuit and from their assessment of the facts, evidence, and law," at issue in a disciplinary proceeding is "the appropriate interpretation of the Rules of Conduct and a factual determination of whether [Webster's] conduct met or violated the Rules at issue." *Hawkins v. Comm'n for Lawyer Discipline*, 988 S.W.2d 927, 936 (Tex. App.—El Paso 1999, pet. denied); *cf. Tirrez v. Comm'n for Lawyer Discipline*, No. 03-16-00318-CV, 2018 WL 454723, at *3 (Tex. App.—Austin Jan. 12, 2018, pet. denied) ("Disbarment, designed to protect the public, is a

18

punishment or penalty imposed *on the lawyer*." (quoting *In re Ruffalo*, 390 U.S. 544, 550 (1968) (emphasis added))). Because the focus in this suit is squarely on Webster's alleged misconduct—not the State—it is not a suit subject to sovereign immunity.

Webster relatedly contends that "sanctions meted out by a court against attorneys for conduct before the court are in no sense a 'suit'" that would be subject to sovereign immunity because "they are a component of a court's exercise of its 'inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system.'" This logic supports the conclusion that professional misconduct proceedings are the same—*i.e.*, not the type of "suit" subject to claims of sovereign immunity—particularly given that the judiciary's "inherent powers" Webster mentions arise from the same constitutional source.

Further, the Commission does not pursue relief that would "control state action." *GTECH Corp.*, 549 S.W.3d at 786 (citing *Ex parte Springsteen*, 506 S.W.3d at 797). In addition to seeking "a judgment of professional misconduct be entered against [Webster]," the Commission requests "an appropriate sanction" for the violation. In other words, the Commission seeks a penalty against Webster consistent with the guiding rules and principles of the Rules of Disciplinary Procedure. *See* TEX. RULES DISCIPLINARY P. 15.05(A) (discussing appropriate sanctions in cases involving dishonesty, fraud, deceit, or misrepresentation to a court or another, ranging from private reprimand to disbarment). Webster urges otherwise, contending that by threatening sanctions, "the State Bar's lawsuit against [Webster] aims to deter the Attorney General and his subordinates from instituting high-profile and contentious lawsuits of which the State Bar may disapprove." To be sure, deterrence is certainly a function of the disciplinary rules. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994) ("In determining the appropriate sanction for attorney

19

misconduct, a trial court must consider . . . the deterrent effect on others[.]" (citing TEX. RULES DISCIPLINARY P. 3.10 (1992))). However, it is not filing "high-profile and contentious lawsuits" the rules seek to deter but the alleged misconduct—here, "conduct involving dishonesty, fraud, deceit or misrepresentation." TEX. DISCIPLINARY RULES PROF'L CONDUCT 8(a)(3). In other words, the Commission's proceeding seeks not to "control state action" but to ensure Texas-licensed attorneys, including those serving in the executive department, adhere to the disciplinary rules of professional conduct applicable to "all attorneys." *See Brewer*, 601 S.W.3d at 723 n.76.

Nor does this case fit within the modern justification for sovereign immunity: protecting the public from the "costs and consequences" of improvident government actions. *Rosenberg Dev. Corp.*, 571 S.W.3d at 741 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)). The purpose of an attorney disciplinary proceeding is to protect the public, maintain the integrity of the profession, and prevent reoccurrence. *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 434. Immunizing Webster from professional-misconduct proceedings in no way furthers the rationale for sovereign immunity, as no civil damages threaten the State.

Finally, Webster argues immunizing executive-branch attorneys from disciplinary proceedings is harmless because they are subject to checks on their ethical obligations in other ways: through an *ultra vires* suit, criminal actions, or a court's inherent authority to impose sanctions. However, the Disciplinary Rules of Professional Conduct contemplate and reject the same principle; the Rules may be enforced only through "the administration of a disciplinary authority." TEX. DISCIPLINARY RULES PROF'L CONDUCT, Preamble: Scope ¶ 15. That attorneys have ethical obligations that may be policed elsewhere is thus inapposite, as no other mechanism can regulate Webster's Texas-law license. Indeed, courts have offered the availability of a professional-discipline proceeding as a counterbalance measure to deter misconduct when civil

suits must otherwise be dismissed due to qualified immunity or litigation privilege. *In re Discipline of Arabia*, 495 P.3d 1103, 1110 (Nev. 2021) (collecting cases); *see also Imbler v. Pachtman*, 424 U.S. 409, 428–29 (1976) (emphasizing prosecutors are still subject to professional discipline even though they are immune from Section 1983 suits, thus "the public" is not "powerless to deter misconduct").

Because sovereign immunity is inapplicable to this proceeding, Webster's argument that it defeats subject-matter jurisdiction fails.[10]

## CONCLUSION

The Commission's jurisdictional allegations affirmatively demonstrate the trial court's jurisdiction. Because Webster is not exempt from jurisdiction by virtue of his position as First Assistant Attorney General, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

YVONNE T. RODRIGUEZ, Chief Justice

July 13, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.
Soto, J., concurring without separate opinion

---

[10] In a footnote, Webster argues that even if the Commission sued him in his individual capacity, he would still be immune from suit through official immunity because "filing a lawsuit on behalf of the State in appellate courts is a discretionary duty" that he did "within the scope of his official duties" and based on his "good-faith belief" in the "legal arguments and factual allegations at the time the lawsuit was filed." He points to no authority that would support exempting executive-branch attorneys from the attorney-disciplinary process on this basis nor does he address how official immunity applies to the Commission's claims against him—for alleged misrepresentations in court pleadings, not "filing a lawsuit." He also fails to explain how the purpose of official immunity would be served in a professional misconduct proceeding. *See Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994) (noting the purpose of official immunity is to insulate government function from "the harassment of litigation, not to protect erring officials" and to free public officials exercising their duties from "fear of damage suits"). Official immunity also does not bar the Commission's suit against Webster.