**COMMISSION FOR LAWYER DISCIPLINE, Appellant,**

v.

**Jeffrey M. STERN, Appellee.**

**No. 01–09–00910–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 17, 2011.

Linda A. Acevedo, Office of the Chief Disciplinary Counsel, Austin, for Appellant.

Warren W. Harris, Bracewell & Giuliani, L.L.P., Wayne H. Paris, Gillis, Paris & Heinrich, P.L.L.C., Houston, for Appellee.

## OPINION

JANE BLAND, Justice.

In this lawyer discipline case, we examine the trial court's jurisdiction to consider allegations of misconduct against a lawyer added after the initial grievance, but before the lawyer elected to have the trial court hear and determine their merit. The Texas Commission for Lawyer Discipline (Commission) instituted this suit against attorney Jeffrey Stern after the investigation of a grievance against him resulted in a determination of just cause to believe that Stern had engaged in professional misconduct. The Commission then added three additional allegations of misconduct to the proceeding. Stern timely notified the Commission that he elected to proceed with the matter in state court. Stern then answered in the trial court and filed a plea to the jurisdiction, contending that the trial court lacked subject matter jurisdiction over the Commission's suit. The trial court granted the plea.

We hold that the trial court erred in dismissing the disciplinary action because Stern properly invoked the court's juris-

diction, and the Commission's amendment of the grievance against Stern neither deprived the court of jurisdiction nor offended due process. We therefore reverse the trial court's judgment and remand the case for further proceedings.

## Background

In July 2004, the Chief Disciplinary Counsel (CDC) of the State Bar of Texas received a letter from Jeremiah Sprague, a Louisiana attorney, enclosing an original petition and motion to remove. Sprague sent these pleadings at the behest of a federal district court in Louisiana. The Louisiana petition alleged legal malpractice action against Stern by his former client, James LaFleur. In his letter, Sprague wrote that Stern improperly had solicited LaFleur through the use of case runners in March 2002. Sprague enclosed additional filings from a case he had brought for another of Stern's former clients, Roland Jones, alleging the same conduct. In closing his letter, Sprague noted that he also had been contacted "by other persons who claim to have knowledge of Jeffrey M. Stern and the use of case runners by Stern in Louisiana." Sprague did not disclose any specific information about these claims, invoking the attorney-client privilege. The CDC conducted an investigation into the charges and dismissed the Sprague complaint in September 2005.

About nine months later, in June 2006, the CDC received another complaint concerning Stern, this time from a Texas and Louisiana-licensed attorney, Frank Neuner, Jr. In his correspondence, Neuner enclosed various documents that "involve[d] allegations of running cases against Jeffrey Stern." Those documents related to the same LaFleur and Jones matters discussed in the Sprague grievance. But the Neuner letter closes with the following:

Subsequent to our conversation, I spoke with Chuck Plattsmeier, who is the Chief Disciplinary Counsel for [ ] Louisiana, and he would be happy to share information that his office has developed regarding Jeffrey Stern. Chuck's number in Baton Rouge is 225–293–3900, and I have taken the liberty of copying Chuck on this correspondence so he will be aware of the information that I have sent to you.

The Texas CDC forwarded a copy of Neuner's letter to Stern with a cover letter explaining that Stern had thirty days to respond to the complaint. *See* TEX.R. DISCIPLINARY P. 2.10, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (West Supp.2010) ("If the Grievance is determined to constitute a Complaint, the Respondent shall be provided a copy of the Complaint with notice to respond, in writing, to the allegations of the Complaint.")

Stern responded. He reminded the CDC that it had considered the LaFleur and Jones matters when it dismissed an allegation of professional misconduct in connection with the Sprague complaint.

This time, however, the CDC decided to proceed. In correspondence dated November 13, 2006, the CDC replied to Stern that it had investigated the Neuner grievance and determined

that there is Just Cause to believe that you have committed one or more acts of Professional Misconduct as defined by the Texas Rules of Disciplinary Procedure (TRDP). In accordance with TRDP 2.14 D, a statement of your acts and/or omissions and the Texas Disciplinary Rules of Professional Conduct that the Chief Disciplinary Counsel contends are violated by the alleged acts and/or omissions will be sent to you at a later date.

In April 2007, the CDC sent Stern a written statement detailing the bases for

the misconduct it alleged and specifying the rules it contends that Stern violated. In the April letter, the CDC included three counts of improper client solicitation arising out of Stern's conduct in connection with his former clients Corey Batiste, Jeremy White, and John Cobb. Stern's conduct with regard to these clients was the subject of a Louisiana state bar investigation. The Neuner grievance had alluded to a Louisiana bar investigation, but it did not describe any of the alleged conduct that formed the basis of that investigation or name these clients.

Enclosed with its statement, the CDC provided Stern with a form to use to elect either to proceed before an evidentiary panel of the district grievance committee or in the district court. The CDC cautioned Stern to return his written election within twenty days. Stern completed the form to reflect his election to have the Commission try the claims against him in state court, and he timely returned it to the CDC.

The Commission then instituted these proceedings based on all of the claims identified in the CDC's April 2007 statement of misconduct. Stern moved for partial summary judgment on the claims arising out of the LaFleur and Jones matters based on the statute of limitations. *See* TEX.R. DISCIPLINARY P. 15.06 (prohibiting discipline for "Professional Misconduct occurring more than four years before the time when the allegation of Professional Misconduct is brought to the attention of the Office of Chief Disciplinary Counsel," except where fraud or concealment is involved or misconduct makes disbarment or suspension compulsory). In response, the Commission amended its petition to drop the claims arising out of the LaFleur and Jones matters, leaving only the complaints against Stern arising out of the Batiste, White, and Cobb matters.

Stern then filed a plea to the jurisdiction in the trial court, contending that the CDC had failed to exhaust the applicable administrative procedures, in violation of Stern's right to due process by including the Batiste, White, and Cobb matters in the April 2007 statement even though the Neuner grievance did not expressly refer to them. Stern claimed the CDC did not provide him with notice of those allegations and an opportunity to respond to them. He argued that their inclusion in the initial grievance was a precondition to the CDC's proceeding in district court on these claims. The trial court granted Stern's motion and dismissed the case.

## Discussion

### I. *Plea to the Jurisdiction*

#### A. *Standard of review*

■ If an agency has exclusive jurisdiction to determine a matter, a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's actions deprives the court of subject matter jurisdiction over claims within the body's exclusive jurisdiction, and the court must generally dismiss such claims without prejudice. TEX. GOV'T CODE ANN. § 2001.171 (West 2000); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex.2002); *see* TEX. GOV'T CODE ANN. § 311.034 (West Supp.2006) (providing that "Statutory prerequisites to suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). Whether an agency has exclusive jurisdiction is a question of law we review de novo. *Subaru of Am., Inc.*, 84 S.W.3d at 222 (citing *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999), and *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998)).

In reviewing a plea to the jurisdiction, we look to the allegations in the pleadings, construe them in the plaintiff's favor, and consider the pleader's intent. *See County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). We consider the facts alleged in the petition, and to the extent relevant to the jurisdictional issue, any evidence submitted by the parties to the trial court. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000). The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). When, as here, the trial court granted grants a motion to dismiss with prejudice without stating the grounds for the dismissal, we may affirm it on any ground presented to the trial court. *See Weiner v. Wasson,* 900 S.W.2d 316, 317 n. 2 (Tex. 1995).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, a court may consider evidence in addressing the jurisdictional issues. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). If the evidence reveals a question of fact on the jurisdictional issue, the trial court cannot grant the plea, and the issue must be resolved by a factfinder. *Id.* at 227–28. If the evidence is undisputed or fails to raise a question of fact, the court should rule on the plea as a matter of law. *Id.* at 228. After a defendant asserts, and supports with evidence, that the court lacks subject matter jurisdiction, the plaintiff must show the existence of a disputed fact issue in order to avoid dismissal for want of jurisdiction. *Id.* The standard of review for such jurisdictional disputes "generally mirrors that of a [traditional] summary judgment." *Id.* On the other hand, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

### B. Procedure for lawyer discipline

The attorney disciplinary process begins when the CDC receives a written statement, from whatever source, alleging professional misconduct by a lawyer. Until the CDC determines whether the statement actually alleges professional misconduct, it is classified as a grievance. TEX.R. DISCIPLINARY P. 1.06(R). Within thirty days of receipt, the CDC must determine whether the grievance is merely an inquiry—that is, an allegation of conduct that, even if true, does not amount to professional misconduct—or a complaint. TEX.R. DISCIPLINARY P. 1.05(S), 2.10. "Complaint" means

> those written matters received by the Office of the Chief Disciplinary Counsel that, either on the face thereof or upon screening or preliminary investigation, allege Professional Misconduct or attorney Disability, or both, cognizable under these rules or the Texas Disciplinary Rules of Professional Conduct.

TEX.R. DISCIPLINARY P. 1.06(G). If the CDC determines that the grievance constitutes a complaint, it must provide the attorney who is the subject of the complaint with a copy of complaint along with notice of the attorney's right to respond, in writing, to its allegations within thirty days after receipt. TEX.R. DISCIPLINARY P. 2.10. The CDC must determine whether there is just cause to proceed within sixty days after the date by which the attorney must file a written response to the complaint. TEX.R. DISCIPLINARY P. 2.12. If the CDC determines that just cause does not exist, then it forwards the complaint to a summary disposition panel, which then makes an independent determination on the existence of just cause. TEX.R. DISCIPLINARY P. 2.13. If either the CDC or the summary

disposition panel decides that just cause exists, the CDC notifies the attorney of the attorney's acts or omissions that it contends violate the disciplinary rules, and the substance of those rules. TEX.R. DISCIPLINARY P. 2.13. Within twenty days after the attorney receives that written notice, he may elect to have the complaint heard in a district court. TEX.R. DISCIPLINARY P. 2.15. Otherwise, the administrative proceeding continues before a specially appointed evidentiary panel. TEX.R. DISCIPLINARY P. 2.17.

Here, Stern elected to proceed in district court, and so the CDC petitioned the Texas Supreme Court to appoint a district court judge to preside over the disciplinary proceeding. At this point, the case proceeds like other civil cases, except where the Rules of Disciplinary Procedure vary from the Rules of Civil Procedure. TEX.R. DISCIPLINARY P. 3.02, 3.03, 3.08B; *see* TEX.R. DISCIPLINARY P. 3.16 (providing that district court's judgment in disciplinary proceeding can be appealed "as in civil cases generally").

### C. Exhaustion of administrative remedies

In the trial court, Stern claimed that the CDC failed to allow Stern to exhaust his administrative remedies because it skipped the initial just cause determination in the Batiste, White, and Cobb matters. The CDC added these three matters in connection with its April 2007 letter to Stern, in which it stated the bases for its allegations of professional misconduct.

■■■ If an agency has exclusive jurisdiction, then a party generally must exhaust all administrative remedies before seeking judicial review of the agency's action. *Subaru of Am., Inc.,* 84 S.W.3d at 221. If the party fails to exhaust those remedies, before instituting suit, the trial court lacks subject matter jurisdiction and must dismiss the claims. *Id.* The exhaus-

tion of remedies requirement ensures a decision on the merits by the agency designated to make it, and thereby prevents courts from acting on a controversy subject to administrative review before the agency has been allowed to complete its own decision and review process. *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 361–62 (Tex.2004); *United States v. Paternostro,* 966 F.2d 907, 912 (5th Cir.1992).

■■■ Here, Stern exhausted the administrative proceedings for all of the complaints when he elected to proceed in the district court after he received notice of them, including the Batiste, White, and Cobb matters not raised in the Neuner grievance. A just cause determination is not a decision on the merits and does not involve an adversarial testing of evidence; it is simply a predicate for instituting a disciplinary action against an attorney. *See Izen v. Comm'n for Lawyer Discipline,* 322 S.W.3d 308, 316–17 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). The lack of a separate initial determination with respect to the Batiste, White, and Cobb claims does not create a hole in the administrative process so as to deprive the trial court of jurisdiction, given the contents of the April 2007 correspondence. That correspondence to Stern contains the CDC's specific allegations about Stern's conduct in the Batiste, White, and Cobb matters and contends that the alleged conduct violates specific disciplinary rules. Fully informed of the allegations against him, Stern opted to require the CDC to proceed against him in district court. He did not object, nor did he seek to avoid trial court jurisdiction. Rather, he expressly invoked it. Because Stern chose the judicial proceeding rather than the administrative one, no administrative action was left for the CDC or the Commission to take. We hold that the trial court

**136**

was not deprived of its jurisdiction due to any failure to exhaust administrative remedies.

### D. Timeliness of just cause determination

Stern also sought dismissal on the ground that the Batiste, White, and Cobb claims were untimely. Stern characterizes a November 17, 2006 letter from Louisiana CDC Plattsmeier to the Texas CDC—which postdates the CDC's just cause determination—as "a separate grievance" concerning the Batiste, White, and Cobb matters. According to Stern, the CDC is barred from including the Batiste, White, and Cobb matters in the underlying proceeding because the CDC did not receive the Plattsmeier letter until after it made the just cause determination in the Neuner grievance, and the CDC failed to issue a timely just cause determination for the Plattsmeier letter. The Plattsmeier letter, however, does not appear in the record, and the evidence in the record of its existence, timing, and general content does not support Stern's characterization of the letter as a separate grievance, particularly in light of the CDC's correspondence to Stern showing that it found just cause to proceed on the Batiste, White, and Cobb matters in connection with its investigation into the Neuner grievance. Thus, the trial court could not properly have held that the letter obligated the CDC to begin a different investigation and issue a separate just cause determination rather than continuing with the Neuner investigation. Stern did not object to the inclusion of these matters with the Neuner grievance at the time he chose to proceed in a district court.

■ Stern's timeliness argument with respect to the Batiste, White, and Cobb matters also points to the absence of the regional disciplinary counsel's written approval of the just cause determination or of a written report detailing findings from its investigation, as well as the lack of documentation before November 13, 2006, that expressly mentions Batiste, White, or Cobb in response to Stern's request for production. The disciplinary rules, however, do not require the written approval or report proposed by Stern, or, for that matter, any additional documentation confirming a determination date. The CDC's November 13, 2006 letter to Stern recites that the office completed its initial investigation and determined on that same date that there was just cause to believe that Stern committed "one or more acts of Professional Misconduct." The CDC's April 26, 2007 correspondence to Stern again recites this date for its determination. It details the factual allegations supporting the claims of misconduct arising out of Stern's contacts with Batiste, White and Cobb. Regardless of the timing, the disciplinary rules allow a summary disposition panel to make a just cause determination on some unspecified later date even if the CDC initially determines that just cause does not exist. Thus, the timing of a just cause decision does not appear to be the trigger for trial court jurisdiction. That trigger is instead the notice of the alleged violation, and the attorney's choice to elect a district court or an evidentiary panel is the jurisdictional driver. *See* TEX.R. DISCIPLINARY P. 2.13, 2.14D, 2.15. Stern timely received that notice. We hold that the undisputed evidence establishes that the CDC timely pursued its action against Stern with respect to the Batiste, White, and Cobb matters.[1] The trial court could not have prop-

1. In addressing alleged misconduct discovered during the course of an investigation, like the Batiste, White, and Cobb matters in this case, the courts of appeals in *Weiss v. Commission for Lawyer Discipline*, 981 S.W.2d 8 (Tex.App.-San Antonio 1998, pet. denied), and

erly dismissed the Commission's claims against Stern for failure to exhaust or timely comply with administrative remedies.

## II. Due process challenge

■ Stern further contends that we should uphold the trial court's dismissal on due process grounds, because Stern had a constitutional right to proper notice of the allegations against him involving former clients Batiste, White, and Cobb, conduct that was at issue before the Louisiana state bar but not initially alleged in the Neuner grievance before the Texas bar.

■ Stern contends that the Commission's suit must be limited to the matters in the Neuner grievance. The Commission responds that it gave Stern actual notice of the Batiste, White, and Cobb matters. Due process requires, at a minimum, notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *see Univ. of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 930 (Tex.1995). An attorney in a disciplinary proceeding is entitled to procedural due process. *Weiss v. Comm'n for Lawyer Discipline,* 981 S.W.2d 8, 14 (Tex.App.-San

Antonio 1998, pet. denied). Stern received due process. The CDC's April 2007 letter to Stern set forth detailed allegations supporting its just cause findings arising out of Stern's conduct relating to the Batiste, White, and Cobb matters. Stern had actual notice that the disciplinary proceedings against him included the Batiste, White, and Cobb matters when he made his election to proceed in district court.

■ The Commission's April 2007 letter satisfies due process concerns because it informed Stern of the complaints against him before he made his choice of forum. Due process does not require any earlier notice. "[D]ue process ... is not implicated by a grievance committee investigation because it is not accorded finality; the lawyer has a right to respond to charges either before an evidentiary panel of the grievance committee or at trial in district court." *Izen,* 322 S.W.3d at 317; *see State v. Sewell,* 487 S.W.2d 716, 718 (Tex.1972) (observing that state bar grievance committee's prior investigations and decision to take or forgo disciplinary action were comparable to grand jury inquisitions, not decisions on merits) (citing *Karlin v. Culkin,* 248 N.Y. 465, 162 N.E. 487, 60 A.L.R. 851, 859 (1928) (Cardozo, J.)); *Weiss,* 981

*Diaz v. Commission for Lawyer Discipline,* 953 S.W.2d 435 (Tex.App.-Austin 1997, no writ), overruled the attorneys' complaints of error in allowing the Commission to proceed on claims that were not identified in the initial grievance or the subject of a separate grievance, but identified during the CDC's investigation. *Weiss,* 981 S.W.2d at 15; *Diaz,* 953 S.W.2d at 437. In *Weiss,* the attorney contended that the trial court erred in allowing the Commission to go forward on pleadings in which it alleged, for the first time, that Weiss had made false statements during the investigatory hearings. Weiss claimed violation of his due process rights on the basis that he was deprived of the opportunity to respond to those allegations at the administrative level. The trial court, noting that the attorney

had several months to prepare for trial, held that he received due notice of the charges against him. 981 S.W.2d at 14–15. In *Diaz,* the Austin court of appeals did not reach the question of whether the inclusion of charges arising from the attorney's knowingly false misrepresentations during the grievance proceeding that were not the subject of a separate grievance amounted to error because their inclusion neither prevented Diaz from making a proper presentation of his appeal nor caused rendition of an improper judgment. 953 S.W.2d at 437 (citing Tex.R.App. P. 81(b)(1)). These cases support our conclusion that the addition of the Batiste, White, and Cobb matters did not cause Stern any cognizable harm.

S.W.2d at 14 (concluding that Commission's petition may include allegations that are part of original complaint as well as those that appear during preliminary investigation of those matters). The disciplinary rules themselves reinforce this conclusion. They first require the Commission to detail its factual allegations against the attorney in its petition before the district court or the evidentiary panel, depending on the attorney's election. *See* TEX.R. DISCIPLINARY P. 2.17A, 3.01A (providing that, after just cause determination, in either administrative or judicial proceeding, Commission must file disciplinary petition containing "[a] description of the acts and conduct that gave rise to the alleged Professional Misconduct *in detail sufficient to give fair notice to Respondent of the claims made....*" (emphasis added)). Stern received timely actual notice of the all of the bases for the disciplinary action against him before he made his election to proceed in court. We hold that Stern's due process claim does not support the trial court's dismissal of the Commission's suit against him.

### III. *Res judicata*

Finally, Stern has urged the affirmative defense of res judicata as grounds for upholding the dismissal. Res judicata, if successfully urged, bars a retrial of claims previously determined. *See* TEX.R. CIV. P. 94; *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n,* 798 S.W.2d 560, 562–63 (Tex.1990); *Int'l Bank of Commerce v. City of Laredo,* 608 S.W.2d 267, 269 (Tex.Civ.App.-San Antonio 1980, writ dism'd). Stern observes that res judicata bars litigation concerning the LaFleur and Jones matters because of the CDC's prior dismissal of the Sprague complaint. The Commission, however, has dropped these claims. Our holding that the Commission could properly include the Batiste, White, and Cobb matters in its petition, given their inclusion in the April 2007 letter, means that the claims arising from those matters continue to be viable. Stern does not show that the latter claims are barred by the earlier LaFleur and Jones proceeding. In any event, res judicata is an affirmative defense that Stern must prove in the trial court—it is not a basis for dismissal for lack of subject matter jurisdiction. *See Williams v. Firemen's Relief & Ret. Fund,* 121 S.W.3d 415, 437 n. 21 (Tex.App.-Houston [1st Dist.] 2003, no pet.) Res judicata thus does not provide a basis for dismissal of the Commission's remaining claims against Stern.

### Conclusion

We hold that the trial court erred in dismissing the Commission's claims against Stern for lack of jurisdiction. We therefore reverse the judgment dismissing the case and remand the case for further proceedings.