**Opinion issued July 27, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00294-CV

————————————

**CINDY THOMPSON, INDIVIDUALLY AND AS HEIR OF CHARLES THOMPSON, CHARLES THOMPSON, AND CC & T INVESTMENTS, LLC, Appellants**

**V.**

**MAE LANDRY, Appellee**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Case No. 18DCV0421**

---

## MEMORANDUM OPINION ON REHEARING

This appeal arises from a collateral attack on a 2005 default judgment foreclosing tax liens on real property in Chambers County, Texas. The taxing authorities that sued to collect delinquent ad valorem taxes on the property obtained

the default judgment after serving all but one of the 12 named defendants with citation by posting on the courthouse door. Cindy Thompson purchased the property at a tax sale in 2007. More than ten years later, Mae Landry, an heir of one of the defendants cited by posting, sued Cindy, her late husband Charles, and their company CC & T Investments, LLC (collectively, Thompson) to declare the default judgment void, alleging that citation by posting violated her constitutional right to procedural due process, and to quiet title to the property. After considering the parties' cross-motions for summary judgment, the trial court ruled in Landry's favor and granted her all the relief she requested.

In four issues on appeal, Thompson contends the trial court erred because:

(1)    Landry did not establish a due process violation;

(2)    Landry's collateral attack on the default judgment is time-barred by the Tax Code's statute of limitations and laches;

(3)    The summary judgment effectively grants relief to nonparties; and

(4)    Thompson's counterclaim and affirmative defenses precluded a final judgment in Landry's favor.

On December 29, 2022, we issued our memorandum opinion and judgment affirming the trial court's judgment in part, reversing in part, and remanding for further proceedings. Thompson has moved for panel rehearing and en banc reconsideration. *See* TEX. R. APP. P. 49.1, 49.5. Landry responded. *See* TEX. R. APP. P. 49.2. We grant panel rehearing, withdraw our opinion of December 29, 2022, vacate our judgment of the same date, and substitute this opinion and judgment in

2

their stead. Thompson's motion for en banc reconsideration of the prior panel opinion is moot.[1]

Our disposition remains the same. Because we conclude that there is a fact question on the alleged due process violation and that no affirmative defense is established as a matter of law, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

The subject property consists of almost 12 acres of land in Chambers County described as:

> ALL THAT CERTAIN TRACT OR PARCEL OF LAND CONTAINING 12.0 ACRES, MORE OR LESS, LOCATED IN THE WILLIAM HODGE SURVEY, ABSTRACT 13, IN CHAMBERS COUNTY, TEXAS; BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN THE DEED FROM MADELINE LITTLE TO FOREST FORD, ET AL DATED MAY 1967 AND RECORDED VOLUM 292, PAGE 223 IN THE DEED RECORDS OF CHAMBERS COUNTY, TEXAS; SAVE AND EXCEPT, HOWEVER ALL THAT CERTAIN TRACT OR PARCEL OF LAND 0.1378 ACRE, MORE OR LESS, DESCRIBED BY METES AND BOUNDS IN THE DEED FROM FOREST FORD, ET AL TO ALBIRTIO FORD THOMPKINS DATED SEPTEMBER 18, 1964 AND RECORDED IN VOLUME 257, PAGE 432 OF THE DEED RECORDS OF CHAMBERS COUNTY, TEXAS; LEAVING HEREIN A TOTAL OF 11.8622 ACRES, MORE OR LESS.

---

[1] *See In re Wagner*, 560 S.W.3d 309, 312 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding); *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Brookshire Bros, Inc. v. Smith*, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Landry claims her family has owned the property generationally for more than 100 years, that she was born on the property in 1950, and that she has lived there for most of her life, including at the times relevant here, at one of six family homes located on the property.

***The tax suit, the default judgment, and the subsequent sale of the property***

In February 2004, taxing authorities in Chambers County named 12 defendants in a delinquent tax suit, alleging that ad valorem taxes on the property had not been paid since 1988.[2] The named tax suit defendants were:

- Jasper Ford;

- George Ford;

- The unknown heirs of Hazel Ford, a/k/a Hazel Ford Hopkins, deceased;

- The unknown heirs of Oscar Hopkins, deceased;

- Amy Ford, a/k/a Amy Ford Franks;

- Albertio Ford, a/k/a Albirtio Ford Thompkins;

- Eldrie Thompkins;

- Dave Ford;

- Sarah Ford Lewis;

- The unknown heirs of Forest Ford, deceased;

- The unknown heirs of Horace Ford, deceased; and

---

[2] The tax suit was styled *Chambers County et al. v. Ford et al.*, No. CV21042, in the 344th District Court of Chambers County, Texas.

4

- Milton Ford.

One of the named defendants—Sarah Ford Lewis—was Landry's maternal grandmother. According to Landry, both Sarah and Landry's mother (Sarah's daughter) died before the taxing authorities filed the delinquent tax suit, leaving Landry to inherit Sarah's undivided interest in the property through the laws of intestate succession.

On July 23, 2004, the taxing authorities' attorney filed an affidavit in the delinquent tax suit seeking approval under Texas Rule of Civil Procedure 117a to serve all but one of the named defendants, Milton Ford, with citation by posting.[3] Milton was excluded from the citation-by-posting list because his mailing address (a post office box) was known to the taxing authorities. But counsel averred that the taxing authorities did not know, and "after diligent inquiry" could not ascertain, the whereabouts of the other defendants and "unknown owners" claiming or appearing

---

[3] Rule 117a(3) provides in pertinent part:

> Where . . . the name or the residence of any owner of any interest in any property upon which a tax lien is sought to be foreclosed, is unknown to the attorney requesting the issuance of process or filing the suit for the taxing unit, and such attorney shall make affidavit that . . . the name or residence of such owner is unknown and cannot be ascertained after diligent inquiry, each such person in every such class above mentioned, together with any and all other persons, including adverse claimants, owning or claiming or having any legal or equitable interest in or lien upon such property, may be cited by publication.

TEX. R. CIV. P. 117a(3).

of record to claim an interest in the property. In addition, counsel stated that, for any defendants for whom a rendition[4] was filed in the previous five years, counsel "caused citation to be issued for personal service on such [d]efendant(s) at the address shown on said rendition and . . . attempted to secure service thereof," but "said [d]efendant(s)" were not located.

The trial court authorized citation by posting and, on the taxing authorities' motion, appointed an ad litem attorney to represent the defendants who were cited by posting but did not appear or answer. The attorney ad litem filed an answer on behalf of one of the named defendants, Jasper Ford, and no other.

The record contains no citation for personal service or return of attempted service on any tax suit defendant listed in counsel's affidavit.[5] Regarding citation by posting, the officer's return states that he received the citation on July 27, 2004, and

---

[4]     "Rendition" is the "reporting of taxable property by the owner to the appraiser." *SLW Aviation, Inc. v. Harris Cnty. Appraisal Dist.*, 105 S.W.3d 99, 101 n.1 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing Jay D. Howell, Jr., 21 TEXAS PRACTICE: PROPERTY TAXES 348, § 361 (4th ed. 2001) ("Rendition is a written list of property and valuations filed with the assessor so that the property listed thereon will bear its fair share of the burdens of government.")).

[5]     Landry elicited testimony from the district clerk that her records did not include any return of citation or green card signature for Milton Ford. She explained that returns of service were kept for only three years after final disposition of a case. She further stated that there were no requests for personal service for Landry or any of the named defendants in the delinquent tax suit, other than Milton.

6

posted it at the Chambers County courthouse door three days later, on July 30. The return does not state how long the citation was posted.

The tax suit proceeded to a bench trial in May 2005. After the trial, the trial court signed a Statement of Evidence—approved by the ad litem attorney—reciting that it had evaluated the taxing authorities' diligence in attempting to "ascertain the residence or whereabouts of the defendant(s) cited by posting." According to the statement, the taxing authorities' witness testified to searching the county's public records and, where such records showed the address of any defendant, "citation was issued for personal service on such [d]efendant(s) at such address in attempt to secure service thereof, but was unserved, except to the extent recited in the judgment [as to Milton]." In addition, the witness testified that "an inquiry was made of the person(s) in possession of the land and those persons in the community who might reasonably be expected to know the whereabouts of [the] defendant(s)."

The court concluded that a diligent inquiry had been made and signed a default judgment foreclosing the tax authorities' liens on the property. The property was then sold to Thompson at a constable's sale in February 2007 for $2,932.73.[6] The constable's resale deed was recorded the next month.

---

[6]    At the time of the default judgment, the adjudged value of the property was $58,380. The amount of unpaid taxes was $42,163.68.

*The land lease and eventual notice to vacate the property*

One and half years after Thompson bought the property at the tax sale, Landry's husband Frank entered a Short Form Lease that designated both himself and Landry as tenants and Thompson's company CC & T Investments as the landlord. The lease stated that the property was "to be occupied only for the purposes of: **Land Lease where existing Personal Property sets**." (Emphasis in original.) Landry did not sign the lease, only Frank did.

Although initially for a term of only one year, the lease apparently was extended until Thompson asked Landry to vacate the property by no later than January 30, 2015.

*Landry moves in the tax suit to set aside the default judgment*

In July 2016, after she was asked to leave the property, Landry filed a motion under the delinquent-tax-suit cause number to vacate the default judgment on the ground that she had an interest in the property and citation by posting violated her right to procedural due process. Landry argued that the taxing authorities had not made a diligent inquiry to locate the named defendants or any others with an interest in the property, including "any heirs or other claimants," like her, who were living on the property. Had the taxing authorities conducted a diligent inquiry, Landry contended, they would have discovered that she and her family were "in open possession of [the] property and that [it] was her homestead." She also asserted that

the county tax records showed she designated the manufactured home where she lived on the property as her homestead before the tax suit was filed. Thompson intervened and moved to dismiss, arguing that the trial court lacked authority to alter the default judgment because its plenary power had long since expired and Landry's motion to vacate did not confer jurisdiction.

The trial court conducted an evidentiary hearing during which several witnesses testified, including (1) the appraisal district's chief appraiser, (2) the county tax assessor, (3) a district clerk, (4) the ad litem attorney appointed in the tax suit, (5) Landry's daughter, and (6) Landry herself. Multiple witnesses testified that six structures sit on the property, including Landry's more than 50-year-old, manufactured home that is affixed to the property at 234 ½ Ford Lane. The ad litem attorney testified that he had relied on the attorney representing the taxing authorities to use due diligence before his appointment to locate the named parties and that the taxing authorities or their counsel should have gone out to the property and examined relevant records. At no time after his appointment, however, did the ad litem attorney visit the property to ascertain whether any defendant or other interested party could be located there.

Documentary evidence was also admitted, including county appraisal records showing Landry's name and address (a post office box) on an account number associated with an improvement on the property at 234 ½ Ford Lane; tax receipts

with Landry's name and address showing that she or Frank had paid taxes on the improvement before the default judgment; and a tax receipt showing Landry had also paid taxes on the land in at least one year that was the subject of the delinquent tax suit, though this receipt included only Landry's name and not her address. Thompson did not contest the authenticity of the county appraisal or tax records or otherwise object to them.

After the hearing, the trial court determined it had jurisdiction and that the default judgment was "void and subject to collateral attack."[7] On Thompson's petition for writ of mandamus, however, this Court directed the trial court to vacate its order denying Thompson's motion to dismiss and instead dismiss Landry's motion challenging the default judgment. *In re Thompson*, 569 S.W.3d 169, 172–75 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding). This Court concluded: "Landry's motion failed to qualify as either a timely direct attack or as a collateral attack [on the default judgment]," and therefore "the trial court lacked authority to entertain the motion to set aside the default judgment." *Id.* at 175.

---

[7] The trial court found that the admitted records showed that Landry and at least five other individuals or entities made real and personal property tax payments in the five years preceding the filing of the delinquent tax suit but were not listed as defendants.

***Landry files a new lawsuit collaterally attacking the default judgment***

In June 2018, Landry filed the underlying suit against Thompson. She again alleged that Thompson's claim to the property was invalid and unenforceable because the constitutionally infirm citation rendered the default judgment void. She reasserted that the taxing authorities had not satisfied the requirements for citing the named tax suit defendants by posting and should have personally served her with citation because the tax records showed she paid taxes on part of the property as her homestead. In addition to requesting that the default judgment be set aside, Landry sought to quiet title to the property in her name, and she requested declaratory and injunctive relief and attorney's fees.

Thompson answered the lawsuit and asserted numerous affirmative defenses. Thompson pleaded that Landry's claims were barred by the one-year statute of limitations for challenging tax sales in Section 33.54 of the Tax Code or the two-year statute of limitations in Section 34.08 for claims against a person who pays overdue taxes on property. *See* TEX. TAX CODE §§ 33.54, 34.08. She also pleaded the affirmative defenses of laches, estoppel, and ratification. And she counterclaimed for reimbursement of the property tax payments she made after purchasing the property in the event the default judgment was set aside.

*A series of summary judgment motions and rulings*

The parties filed a series of summary judgment motions in which they relitigated the arguments and evidence presented to the trial court on Landry's original motion to set aside the default judgment under the tax suit cause number.

Thompson moved twice for a traditional summary judgment on her limitations defense. She argued that the Tax Code authorized actions challenging a tax sale, but only if filed within the one- or two-year limitations periods. *See* TEX. TAX CODE §§ 33.54(a), 34.08(c). Thompson continued: because Landry had legal remedies but did not timely availed herself of those remedies, she was not entitled to a bill of review or any equitable relief quieting title. Further, according to Thompson, the Tax Code's notice and hearing provisions satisfied due process.

Landry responded that her collateral attack on the default judgment was not time barred because her procedural due process rights trumped any statutory limitations period. The trial court denied both of Thompson's motions but stated in its order denying the second motion that the records in the underlying suit and the tax suit showed "a complete lack of notice" to Landry and the tax suit defendants.[8]

---

[8] The trial court granted permission to appeal both orders denying Thompson's traditional summary judgment motions. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d) (authorizing interlocutory appeals if trial court grants permission and appealed-from order (1) "involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation"). This Court denied the petitions for permissive appeal. *See Thompson v. Landry*, No. 01-19-

Thompson also filed a no-evidence motion for summary judgment, arguing that the trial court should allow her possession of at least part of the property because there was no evidence that either Landry or Sarah (through whom Landry claimed her interest in the property) owned *all* the property that was transferred to the Thompsons by way of the tax sale. Thompson also challenged each element of Landry's quiet title claim as having no support in the evidence.

For her part, Landry moved for a traditional summary judgment. Her motion argued that the default judgment was void because the taxing authorities, despite having knowledge she paid taxes on the property and claimed it as her homestead, failed to personally serve her in compliance with Rule 117a and thereby violated procedural due process requirements. She further argued that the void default judgment rendered the subsequent sale of the property to Thompson a nullity. And she requested declaratory relief to that effect as well as a judgment quieting title. The summary judgment evidence attached to Landry's motion included, among other things, the transcript of the evidentiary hearing on her original motion to set aside the default judgment and the exhibits admitted at that hearing.

Thompson filed a combined summary judgment response and third traditional summary judgment motion. Without distinguishing between the response and

00203-CV, 2019 WL 1811087, at *1 (Tex. App.—Houston [1st Dist.] Apr. 25, 2019, no pet.) (mem. op.); *Thompson v. Landry*, No. 01-18-00889-CV, 2018 WL 6540152, at *1 (Tex. App.—Houston [1st Dist.] Dec. 13, 2018, no pet.) (mem. op.).

motion portions of her combined filing, Thompson reasserted her limitations defense and her position that at least some part of the default judgment should remain in effect since Landry did not claim the entire property. In addition, Thompson argued her pending counterclaim for reimbursement of property taxes precluded final summary judgment in Landry's favor, since Landry's motion had not challenged any element of the counterclaim. Beyond urging the trial court to reconsider its prior summary judgment denials, Thompson did not incorporate or attach any of her own evidence in her summary judgment response. Neither did she object to any of Landry's summary judgment evidence.

Landry again replied that Thompson's argument improperly elevated the Tax Code's statutory requirements over constitutionally mandated due process.

After a hearing, the trial court issued its final order:

- granting Landry's traditional motion for summary judgment;

- denying Thompson's no-evidence motion for summary judgment and third traditional motion for summary judgment;

- stating that it had reconsidered but still denied Thompson's first and second traditional motions for summary judgment; and

- taking judicial notice of "all pleadings, documents[,] and transcripts from the evidentiary hearing in the [tax suit.]"

Based on these rulings, the trial court ordered that "all relief requested" by Landry was granted and that "all relief requested" by Thompson was denied. And it stated that the summary judgment order was "final" and "appealable."

14

## II. Discussion

Thompson contends the trial court's summary judgment is erroneous because Landry did not establish as a matter of law that service of citation by posting violated her due process rights and, even if there was a due process violation, Landry's action to set aside the default judgment and subsequent tax sale is time-barred by the Tax Code's one- and two-year statutes of limitations.

### A. Standard of review

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002). The party moving for traditional summary judgment has the burden to show no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Knott*, 128 S.W.3d at 216. When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). Because the trial court's order does not specify the

15

grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216.

**B.      The law on due process and service of citation**

Texas Rule of Civil Procedure 117a governs the service of citation on defendants in suits for delinquent ad valorem taxes. TEX. R. CIV. P. 117a. That rule provides that, where the defendant is a Texas resident whose name and residence are known, citation shall be by personal service, unless the defendant is subject to service by posting under Rule 117a(3). TEX. R. CIV. P. 117a(1), (3). Relevant here, subsection (3) authorizes citation by publication when:

> [T]he name or the residence of any owner of any interest in any property upon which a tax lien is sought to be foreclosed, is unknown to the attorney requesting the issuance of process or filing the suit for the taxing unit, and such attorney shall make affidavit that . . . the name or residence of such owner is unknown and cannot be ascertained after diligent inquiry.

TEX. R. CIV. P. 117a(3). Additionally, subsection (3) provides that the citation shall be published in a newspaper published in the county in which the property is located, but that the "maximum fee for publishing the citation shall be the lowest published word or line rate of that newspaper for classified advertising." *Id.* If the attorney requesting the issuance of process avers that publication of the citation cannot be had for this fee, "service of the citation may be made by posting a copy at the courthouse door of the county in which the suit is pending[.]" *Id.*

16

Rule 117a's "diligent inquiry" requirement for substituted service incorporates the requirements of constitutional due process. *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 188 (Tex. 2022). The Due Process Clause prevents the government from depriving a person of his or her "property, without due process of law[.]" U.S. CONST. amend. XIV, § 1; *see also* TEX. CONST. art. I, § 9.[9] Before a court may exercise its power to deprive someone of property, it must provide "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (quoting *Mullane*, 339 U.S. at 314); *see also Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[P]rocedural due process requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." (quotations omitted)); *Comm'n for Lawyer Discipline v. Stern*, 355 S.W.3d 129, 137 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("Due

---

[9]     The Texas Supreme Court has held that the United States Constitution's due process clause and the Texas Constitution's due course of law clause are, for the most part, coextensive. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 86 (Tex. 2015). The parties have not identified any differences in text or application that are relevant to the issues raised here, so we treat the requirements of both Constitutions as identical for purposes of this opinion.

process requires, at a minimum, notice and an opportunity to be heard at a meaningful time and in a meaningful manner.").

Two United States Supreme Court cases illustrate this principle. In *Mullane*, the Court considered whether notice to beneficiaries of a trust, accomplished by publication in a local newspaper in strict compliance with an applicable banking law, was sufficient to support a judicial settlement of the trust under the federal due process clause. 339 U.S. at 309–10. At the outset, the Court observed that personal service—the "classic form of notice always adequate in any type of proceeding"— might not be possible or constitutionally required in every case. *Id.* at 313–14. Nonetheless, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 314. The Court recognized that notice by publication was not a "reliable means of acquainting interested parties of the fact that their rights are before the courts." *Id*. at 315. "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Id*. Ultimately, the Court upheld the notice by publication for those beneficiaries whose interests or addresses were unknown to

18

the trustee. *Id*. at 318. But as to known beneficiaries with a known address, notice by publication stood "on a different footing." *Id*. The Court concluded that those beneficiaries deserved at least a mailing to their address apprising them of the trust settlement. *Id*.

Thirty-three years later, the Court expanded on *Mulane* in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983). In *Mennonite*, a landowner failed to pay property taxes, and the county began proceedings to sell the property. *Id*. at 794. State law only required that notice be posted at the local courthouse and published for three consecutive weeks in a newspaper. *Id*. at 793. The county complied with that procedure and then auctioned off the property. *Id*. The mortgage holder for the landowner did not learn of the tax sale until after a two-year redemption period expired. *Id*. at 794. The mortgage holder sued to set aside the tax sale, arguing that publication of notice of the tax sale was constitutionally inadequate. *Id*. at 795.

The Court agreed, writing that "unless [the interested party] is not reasonably identifiable, constructive notice [by publication] alone does not satisfy the mandate of *Mullane*." *Id*. at 798. The identity of the landowner and mortgage holder was known, and the Court assumed an address could have been ascertained by reasonably diligent efforts. *Id*. at 798 n.4. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and

19

address are reasonably ascertainable." *Id*. at 800; *see also Schroeder v. New York*, 371 U.S. 208, 211 (1962) (landowner whose name and address were on deed records and tax rolls was entitled to more than service by publication because notice by publication "did not measure up to the quality of notice" demanded by due process clause); *Walker v. City of Hutchinson*, 352 U.S. 112, 116 (1956) (publication of notice of condemnation deprived landowner of due process in condemnation proceeding, where landowner's "name was known to the city and was on the official records" and there was "no compelling or even persuasive reasons why [] direct notice cannot be given").

Our own Supreme Court echoed these principles in *Anderson v. Collum*, a case concerning the validity of service by publication under Rule 117a. *See* 514 S.W.2d 230 (Tex. 1974). There, the Court held that when property owners were residents and could have been found with diligent inquiry, and when the state's affidavit for citation by publication alleged only that the owner was a nonresident or person whose residence was unknown, the tax sale should be set aside. *Id.* at 230–31. "[T]he failure to comply with [Rule 117a], and the admitted lack of diligence to locate the defendants render[ed] the service by publication ineffective." *Id.* at 231; *see also Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 147 (Tex. 1951) ("If personal service can be effected by the exercise of reasonable diligence, substituted service is not to be resorted to.").

20

Since this appeal was filed, the Texas Supreme Court has revisited substituted service under Rule 117a. *See Mitchell*, 649 S.W.3d at 180. In *Mitchell*, the heirs of Elizabeth Mitchell sued the current owners of disputed mineral interests, alleging the tax foreclosure judgment rendered against Elizabeth was void as to her because she was not served in accordance with her constitutional right to procedural due process. *Id.* at 184–85. Elizabeth was a named defendant "[among the] almost 500 other defendants" whose mineral interests were foreclosed upon by taxing authorities after citation by posting. *Id.* The Court reaffirmed that Rule 117a's diligent inquiry requirement incorporates the constitutional guaranty of procedural due process by ensuring that "a party seeking to serve a defendant by publication or posting has provided process that is more than a mere gesture." *Id.* at 189. The Court held: "[A] citation by publication or posting violates due process when the address of a known defendant is readily ascertainable from public records that someone who actually wants to find the defendant would search." *Id.* at 190; *see also In re E.R.*, 385 S.W.3d 552, 564 (Tex. 2012) (explaining that reasonable search "must extend to places where information is likely to be obtained and to persons who, in the ordinary course of events, would be likely to have information of the person or entity sought").

More than one of *Mitchell*'s holdings is relevant here. In addition to defining the nature of a collateral attack on a judgment that alleges due process violations,

21

*Mitchell* addressed what evidence a court may consider in deciding whether a defendant was properly served by posting. *Id.* at 190–91. The mineral interest owners argued the heirs' evidence—eight warranty deeds listing Elizabeth's name and address—could not be considered under Texas precedent because they were extrinsic to the record of the underlying foreclosure suit. *Id.* at 191. Although the Court recognized the general rule that "extrinsic evidence cannot be considered in a collateral attack to set aside a final judgment," it explained that the rule "does not extend to cases over which a court 'has not, under the very law of its creation, any possible power.'" *Id.* (quoting *Templeton v. Ferguson*, 33 S.W. 325, 328 (Tex. 1895)); *see also York v. State*, 373 S.W.3d 32, 42 (Tex. 2012) (observing that laws of Texas courts' creation include United States Constitution). The Court reasoned:

> Because the Constitution and Rule 117a require a plaintiff to consult public deed and tax records as part of its diligent inquiry when a defendant's name or residence is unknown, the contents of those records should be regarded as part of the record of the suit rather than as extrinsic evidence. We therefore hold that when such public records contain the address of a defendant served by publication or posting, a court hearing a collateral attack on a judgment may consider that evidence in deciding whether service complied with the constitutional demands of due process.

*Id.* at 191.

*Mitchell* also discussed the applicability of certain defenses. Like Thompson here, the mineral interest owners argued that even if the foreclosure judgment violated procedural due process, the judgment could not be declared void because

22

the heirs' suit was time-barred by the one-year limitations period in Section 33.54 of the Tax Code. *See id.* at 193–94; *see also* TEX. TAX CODE § 33.54 (action relating to title to property may not be maintained against purchaser of property at tax sale unless action is commenced "before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record"). *Mitchell* rejected this argument. The Court noted that no temporal limits may be placed on a challenge to a void judgment when such a claim is filed by a party who did not receive the type of notice the party was entitled to receive under the circumstances. *Id.* at 194. Rather, "state statutory requirements must give way to constitutional protections." *Id.* (citing *E.R.*, 385 S.W.3d at 556) (providing that Texas rules "must yield to contrary precedent from the U.S. Supreme Court")). When such a claim is properly brought, the requirements of Section 33.54 are "irrelevant," as the suit operates independent of the state statutory provision. *Id.* In short, "[a] complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time."[10] *Id.* (quoting *E.R.*, 385 S.W.3d at 566).

---

[10] In this regard, *Mitchell* builds on the guidance provided earlier in *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012). Addressing procedural aspects of due process claims, *PNS Stores* held that "a judgment may also be challenged through a collateral attack when a failure to establish personal jurisdiction violates due process." *Id.* (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)). The Supreme Court observed that "a judgment entered without notice or service is constitutionally infirm, and some form of attack must be available when defects in

Thompson pleaded a second Tax Code limitations period here that was not addressed in *Mitchell*. *See* TEX. TAX CODE § 34.08(b). As noted above, Section 33.54(a) of the Tax Code prohibits actions relating to the title of property against the purchaser of the property at a tax sale unless the action "is commenced" either (1) before the first anniversary of the date that the purchaser records the deed or (2) before the second anniversary of the date the purchaser's deed is recorded if the property was the residence homestead of the owner when the delinquent tax suit was filed. *Id.* § 33.54(a). Section 34.08(b) prohibits a person from "commenc[ing] an action" against a subsequent purchaser challenging the validity of a tax sale unless the action is commenced within the same deadlines; before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record or before the second anniversary if the property was the residence homestead of the owner. *Id.* § 34.08(b). If a person is not barred from bringing an action challenging the validity of a tax sale under subsection (b), the person must bring the action "no later than two years after the cause of action accrues to recover real property claimed by another who: (1) pays applicable taxes on the real property before overdue; and

___

personal jurisdiction violate due process." *Id.* at 272–73. Although a direct attack must be brought within a definite time, a collateral attack may be brought at any time. *Id.* at 272 (citing *E.R.*, 385 S.W.3d at 556). When attacked collaterally, a judgment alleged as void is presumed valid, but the presumption disappears when the record affirmatively reveals a jurisdictional defect. *Id.* at 273.

24

(2) claims the property under a registered deed executed pursuant to Section 34.01 [sale of property]." *Id.* § 34.08(c).

Although not specifically addressed in *Mitchell*, we see no reason why the principles announced in *Mitchell* would not apply equally to the statutes of limitations in sections 33.54 and 34.08. Accordingly, we hold that the temporal limitations in section 33.54 and 34.08 give way to constitutional protections, *see Mitchell*, 649 S.W.3d at 194, and we turn to the issue of whether the record supports a disposition of Landry's due process claim as a matter of law.

## C.    Fact issues exist on the constitutional adequacy of citation by posting

Given the parties' competing summary judgment motions, the fundamental issue on appeal is whether Landry established, as a matter of law, that the delinquent-tax-suit court did not acquire personal jurisdiction over her because she was not served with citation in compliance with Rule 117a and the constitutional requirements of procedural due process. If Landry established as a matter of law that the requirements of Rule 117a and procedural due process were not met, then the default judgment and tax sale are void as to her. If, on the other hand citation was constitutionally sufficient, then the default judgment and tax sale were not void on this basis, and Landry's quiet title claim brought more than ten years after the default judgment is time-barred under the Tax Code limitations periods. After reviewing the record, we conclude it does not conclusively establish the taxing authorities'

25

noncompliance with the requirements of Rule 117a and due process, but it raises a fact issue.

When attacked collaterally, a judgment alleged as void is presumed valid, but the presumption disappears when the record affirmatively reveals a jurisdictional defect. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012). Here, Landry was not named as a defendant in the delinquent tax suit. And unlike in *Mitchell*, there is no evidence that Landry is listed in the deed records as having any personal interest in the property. Nonetheless, the taxing authorities sought approval for substituted service not just on the named defendants but also the "unknown owners" of the property. Rule 117a and due process required the taxing authorities to make a diligent inquiry into the name or residence of such owners before citation by posting could be authorized. *See* TEX. R. CIV. P. 117a. The statement of evidence recites that the taxing authorities attempted to ascertain the residence or whereabouts of the defendants cited by posting by searching the county's public records and by inquiring of "the person(s) in possession of the land." But Landry's unobjected-to summary judgment evidence calls this statement into question.

The records of both the county appraisal district and tax assessor included documents associating Landry's name with the subject property. The county appraisal district's records showed at least six dwellings on the property with separate account numbers, addresses, and different owner names for which there

26

were appraisals in 2003, the year before the tax suit was filed. Five of the dwellings were manufactured homes and one was a single-family "frame" residence. The names on the accounts included Landry and her husband, whose taxable improvement on the property was noted as being located at the "END OF FORD RD.," with an address of "234.5 FORD LANE." Tax receipts showed that Landry made personal property tax payments for an improvement at the same address within five years of the tax suit. Additionally, at least two tax receipts showing that Landry paid taxes on the land for the 1995 tax year—one of the tax years included in the tax suit—were included in the summary judgment evidence. Although these receipts state that the amounts paid were "Paid By: MAE H. LANDRY," they list Thompson as the owner and do not include an address for Landry. According to the county tax assessor, this was because the computer program used to maintain the records would have substituted Thompson's name as the owner on the receipt when she acquired the property at the 2007 tax sale.

Thompson did not challenge the authenticity of any of these records or otherwise make objections to Landry's summary judgment evidence, perhaps because there was at least a question whether such records were inadmissible under the extrinsic evidence rule when Landry's summary judgment motion was decided. But *Mitchell* has now answered that question and instructs that such records may be

considered in determining compliance with the requirements of Rule 117a and procedural due process. *See* 644 S.W.3d at 191.

As described by the Texas Supreme Court, "[a] diligent search must include inquiries that someone who really wants to find the defendant would make, and diligence is measured not by the quantity of the search but by its quality." *E.R.*, 385 S.W.3d at 565. Although the exercise of due diligence (or a lack thereof) in effecting service can be conclusively established, it is generally a question of fact. *See id.* at 565–66 (whether search was diligent depends on if "reasonable search" was conducted); *see also Ramirez v. Consol. HGM Corp.*, 124 S.W.3d 914, 916 (Tex. App.—Amarillo 2004, no pet.) (citing *Ward v. Nava*, 488 S.W.2d 736, 737–38 (Tex.1972) ("Whether service is valid involves a question of fact to be decided by the trier of fact.")). Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816 (citation omitted).

Although we cannot say that the tax records and receipts showing some connection between Landry and the property conclusively establish that the taxing authorities failed to satisfy the requirements of Rule 117a and procedural due process with respect to Landry, the records raise at least a fact question as to the taxing authorities' diligence. In the absence of conclusive evidence, summary judgment for Landry was not proper.

**D.     Thompson's affirmative defenses are not conclusively established**

Thompson argues that she should have prevailed as a matter of law on her affirmative defenses of limitations and laches. We disagree.

The existence of a fact question on the taxing authorities' compliance with the requirements of Rule 117a and due process also precludes summary judgment in Thompson's favor on her limitations defense, because if the question of the citation's adequacy is ultimately resolved in Landry's favor, her challenge to the default judgment is independent of the Tax Code's limitations periods.

Laches is also not dispositive here. Laches is an affirmative defense that prevents a plaintiff from asserting a claim due to a lapse of time. *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 912 (Tex. App.—Houston [1st Dist.] 1995, writ denied). To prevail, the party asserting laches must show: (1) there was an unreasonable delay by the other party in asserting legal or equitable rights, and (2) the party asserting laches made a good faith change in position to her detriment because of the delay. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998).

In support, Thompson cites *E.R.*, a Texas Supreme Court case holding that a void judgment terminating parental rights can be collaterally attacked at any time. 385 S.W.3d at 568–69. But in *E.R.*, the Court warned that "[i]f, after learning that a judgment has terminated her rights, a parent unreasonably stands mute, and granting

relief from the judgment would impair another party's substantial reliance interest, the trial court has discretion to deny relief." *Id.* at 569 (observing that "[u]nlike a judgment debtor who hopes to avoid collection efforts on a money judgment, a parent whose rights have been terminated has every incentive to promptly seek reinstatement upon learning of the termination"). According to Thompson, Landry should be denied relief under *E.R.* because the evidence conclusively establishes that Landry had actual notice of the default tax judgment during the Tax Code's redemption period but unreasonably delayed acting. Specifically, Thompson points to the evidence that Landry's husband leased a portion of the property from Thompson for several years before Landy challenged the default tax judgment.

We note that "[t]his case differs from *E.R.* in that the default judgment transfers real property rather than terminating the parent-child relationship or awarding money damages." *Mitchell*, 649 S.W.3d at 197. And the Texas Supreme Court has not decided "whether laches or any other equitable doctrine can provide a valid defense to a notice-based collateral attack on a judgment transferring property." *Id.* at 196. In *Mitchell*, the Court expressly took "no position" on the issue, while instructing the parties that they could offer evidence relevant to a laches defense on remand. *Id.* (citing *E.R.*, 385 S.W.3d at 567).

We need not resolve that question now. To the extent laches is an available defense, it is not conclusively established here. The lease Thompson points to is

signed only by Landry's husband, not Landry herself. Landry testified in her deposition that her husband never told her about the lease. Although Landry knew her husband paid some rent to Thompson, her testimony does not reveal what she thought was being rented. Landry only recalled seeing Thompson on the property when the eviction proceedings started. And critically, the record does not show when Landry learned about the rent payments to inform any reasonableness inquiry. Thus, while the testimony Thompson cites may be some evidence of actual knowledge, it is not conclusive as to whether Landry unreasonably delayed in asserting her claim.

For all these reasons, we hold that the trial court erred by granting Landry's motion for traditional summary judgment but did not err by denying Thompson's traditional motions based on limitations or laches.[11]

---

[11] We do not reach the remainder of Thompson's issues on appeal either because it is unnecessary to do so given our disposition or those issues—including whether Landry established an interest in the property and whether, if the default judgment and subsequent tax sale are set aside, Thompson is entitled to reimbursement—are intertwined with the threshold due process question and therefore must also be remanded. *See* TEX. R. APP. P. 47.1; *see also* TEX. R. APP. P. 44.1(b); *Flying Diamond-W. Madisonville Ltd. P'ship v. GW Petroleum, Inc.*, No. 10-07-00281-CV, 2009 WL 2707405, at *15 (Tex. App.—Waco Aug. 26, 2009, no pet.) (mem. op.) (remanding entire case because issues that required reversal were interwoven with and not clearly separable from remainder).

31

## III. Conclusion

Because fact issues exist as to whether citation by posting violated the requirements of Rule 117a and Landry's due process rights and, consequently, whether sections 33.54 and 34.08 of the Tax Code or laches apply, we reverse the part of the trial court's judgment granting Landry's motion for traditional summary judgment and affirm the remainder. We remand the case to the trial court for further proceedings consistent with this opinion.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Hightower, and Radack.[12]

---

[12] The Honorable Sherry Radack, Senior Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.